IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN M. BRAUN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SQUARE D COMPANY and | : | NO. 02-4001 |
| ENGEL INDUSTRIES, INC. | : | JURY TRIAL DEMANDED |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2003, upon consideration of the

Motion for Partial Summary Judgment filed by defendant Engel Industries, Inc. and any response

thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby

entered in favor of Engel Industries, Inc. as to Count V of the Complaint (Breach of Warranties).

It is further ORDERED that Summary Judgment is hereby entered in favor of Engel Industries,

Inc. as to all claims that are based on a failure to warn.

**BY THE COURT:**

_____
                                                            J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN M. BRAUN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SQUARE D COMPANY and | : | NO. 02-4001 |
| ENGEL INDUSTRIES, INC. | : | JURY TRIAL DEMANDED |

## **ALTERNATIVE ORDER**

AND NOW, this ____ day of _____, 2003, upon consideration of the

Motion for Partial Summary Judgment filed by defendant Engel Industries, Inc. and any response

thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby

entered in favor of Engel Industries, Inc. as to Count V of the Complaint (Breach of Warranties).

It is further ORDERED that Summary Judgment is hereby entered in favor of Engel Industries,

Inc. as to the strict liability claim premised on a failure to warn.

**BY THE COURT:**

_____
                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN M. BRAUN           :     CIVIL ACTION
                                  :
    v.                  :
                                  :
SQUARE D COMPANY and     :     NO. 02-4001
ENGEL INDUSTRIES, INC.      :     JURY TRIAL DEMANDED

### DEFENDANT ENGEL INDUSTRIES, INC.'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Engel Industries, Inc., by its attorneys, Rawle & Henderson LLP,
respectfully requests that this Court enter partial summary judgment in its favor pursuant to
Fed.R.Civ.P. 56(b) and, in support thereof, moving defendant asserts the following:

1.     Plaintiff Justin Braun filed this products liability lawsuit against
defendants Square D Company and Engel Industries, Inc. to recover damages for personal
injuries that he sustained as a result of an industrial accident.  See Complaint attached hereto as
Exhibit "A."

2.     On April 4, 2001, plaintiff Justin Braun, a sheet metal apprentice
employed by Bohrer-Reagan Co., suffered a crush injury to the four fingers on his right hand
while operating a Bendall press brake manufactured by defendant Engel Industries, Inc.  Id.

3.     The press brake, which was sold to Bohrer-Reagan Co. in 1969, is an
industrial-size machine that is used to form products out of sheet metal.  See Invoice attached
hereto as Exhibit "B."  The typical operation of the machine requires the operator to hold a piece
of sheet metal in the desired position, to form the appropriate bend, and the machine is then
activated by means of a "foot switch" manufactured by Square D Company.  See Photos of
Bendall press brake and Square D foot switch attached hereto as Exhibit "C" (the stickers

depicted in the photographs were added by plaintiff's employer after the accident); <u>see also</u>

Deposition of B. Ashman, Exhibit "D," at p. 14.

     4.     When the press brake was sold in 1969, a Square D foot switch was

delivered to Bohrer-Reagan Co. with the machine. However, the original foot switch broke and

it was replaced with another Square D foot switch at some point after 1988. <u>See</u> Dep. of M.

Reagan, Exhibit "E," at pp. 23-24; Dep. of B. Ashman, Exhibit "D," at pp. 22-24.

     5.     At the time of the accident, the plaintiff was fabricating a piece of duct out

of sheet metal. According to the Complaint, plaintiff's foot "became lodged between the pedal

and the safety cover affixed to and forming a part of the foot switch," which activated the press

brake while plaintiff's hand was in the path of the "blade." <u>See</u> Complaint, Exhibit "A," at ¶ 14-

15.

     6.     During his deposition, plaintiff Justin Braun described the accident as

follows:

> Q.     Do you want to explain, again, in your own words
> what happened?
>
> A.     I was making an H-boot, I finished it up, I ran out of
> material so I went to grab the H-boot out of the
> machine and I turned to walk away. As I turned to
> walk away, my foot was caught in the pedal. I
> looked down to see what was holding my foot and
> my foot was already in the air. I put my foot back
> down on the ground and when I looked up, my hand
> was caught in the machine.
>
> •     •     •     •
>
> Q.     At the moment that you were pulling your foot out of the pedal,
> where do you know now your right hand apparently must have
> been?
>
> A.     Underneath the blade on the metal.
>
> Q.     Is it fair to say that you didn't realize your hand was there?

849375 v.1

A.   I knew it was on the metal.

Q.   On the H-boot you mean?

A.   Yes.

Q.   It is fair to say that you did not know what part of your hand was under the blade?

A.   No; no.

Q.   Would it be fair to say that you would not deliberately put any part of your hand under the blade at any point in time?

MR. SCHUCHMAN:  Objection to the form.

THE WITNESS:  Yes

BY MR. WAGNER:

Q.   Obviously, you would know that if your hand was under the blade and the blade came down, you would be badly injury?

A.   Yes.

MR. SCHUCHMAN:  Objection to the form.

See Dep. of J. Braun, attached hereto as Exhibit "H," at pp. 71, 75-76.

7.   The Complaint alleges claims for strict liability, negligence and breach of warranty against defendants Square D Company and Engel Industries, Inc.

8.   The plaintiff is a resident of Pennsylvania and the accident occurred in Pennsylvania, so the substantive law of Pennsylvania is applicable to this case.

9.   Under Pennsylvania law, a cause of action for personal injuries resulting from a breach of warranty must be brought within four years of the date of sale.

10.  The Bendall press brake involved in plaintiff's accident was sold to plaintiff's employer, Bohrer Reagan Co., in 1969.  See Invoice, Exhibit "B."

3

11.     Plaintiff's cause of action for "breach of warranties" against Engel Industries, which is set forth in Count V of the Complaint, is barred by the statute of limitations and should be dismissed as a matter of law.

12.     As part of his negligence and strict liability claims, plaintiff Justin Braun has alleged that Engel Industries, Inc. failed to provide appropriate warnings regarding certain hazards.

13.     Plaintiff produced a report drafted jointly by Ronald D. Schaible and Norman W. Johanson, who have been designated as trial experts.

14.     In that report, plaintiff's experts offer the opinion that the Bendall press brake and the foot pedal were defectively designed.  In addition, plaintiff's warnings expert, Ronald D. Schaible, offers the opinion that Square D and Engel failed to provide appropriate warnings or safety instructions about the possibility of "unintended activation" if the operator's boot became "trapped" in the foot switch.  Unintended activation of the press brake is a hazard if the operator's hands are in the point of operation.  See Report attached hereto as Exhibit "F."

15.     Because the Bendall press brake was sold in 1969, Engel Industries cannot identify all of the instructions or warnings that were provided with the machine at the time of sale.  Also, plaintiff's employer, Bohrer Regan Company, cannot determine if additional instructions or warnings were provided with the machine, other than those identified during discovery.  See Dep. of M. Reagan, Exhibit "E," at pp. 13 and 79.

16.     However, there is no evidence to support a conclusion that any written instructions or manuals provided by Engel Industries would have been shown to the plaintiff because, even when written manuals were available, Bohrer-Reagan Company did not show those materials to its employees.  Instead, Bohrer Reagan Company relied upon oral instructions

4

to train its employees to operate the various machines in its metal shop.  <u>See</u> Dep. of B. Ashman, Exhibit "D," at pp. 17, 25-26 and 34-35.

17.     On the day of the accident, a co-worker, Bob Bova, showed Mr. Braun how to operate the Bendall press brake.  After five minutes, however, Mr. Bova was instructed to return to his own job.  <u>See</u> Deposition of B. Bova, Exhibit "G," at pp. 33.

18.     Furthermore, during his deposition, Justin Braun testified that he did not feel that he  needed written instructions regarding the operation of the press brake because he felt he was "adequately informed about how to operate it."  <u>See</u> Deposition of J. Braun, Exhibit "H," at p. 46.

19.     Furthermore, prior to the accident, Justin Braun knew that he needed to be careful while operating the brake press.  <u>See</u> Deposition of J. Braun, Exhibit "H," at p. 49.  In particular, he knew "to be careful about where the blade is at all times."  <u>Id.</u>  He understood "that if you got your hand caught under the blade, you could be injured."  <u>Id.</u> at p. 50.  He understood that if his "hand were under the blade and the blade came down, [he] would be badly injured."  <u>Id.</u> at p. 76.  He also understood that if he "had [his] hand in the hand in the point of operation during a cycle that [he] was going to get injured."  <u>Id.</u> at pp. 160-61.

20.     It is well established in Pennsylvania that in any products liability action, whether grounded in negligence, breach of warranty or strict liability, a plaintiff must prove that there was a defect in the product **and** that the defect proximately caused the injury in question.  A plaintiff cannot recover by proving the existence of a defect without proof of causation.

21.     A plaintiff may not go before a jury with mere conjecture and guess as to the cause of harm; there must be evidence to support the conclusion that the alleged defect caused the harm.

22.     When asserting a cause of action based upon a failure to warn, plaintiff must present evidence to support a reasonable inference, rather than a guess, that the existence of an adequate warning would have prevented the accident before the issue of causation may be presented to a jury.

23.     In this case, there is no evidence to support a conclusion that additional warnings or instructions would have prevented plaintiff's accident.

24.     The uncontradicted evidence establishes that any written manuals or instructions provided by Engel Industries would not have been shown to the plaintiff by his employer, since the employer had a policy of relying upon oral training.

25.     Furthermore, prior to his accident, plaintiff knew that he needed to exercise caution while operating the press brake and he knew that if the machine was activated while his hand was in the point of operation, he would be injured.

26.     The courts applying Pennsylvania law have consistently held that where a plaintiff was aware of the risk of bodily injury posed by a product, any heeding presumption is rebutted and all claims based on a failure to warn should be dismissed as a matter of law.

27.     In this case, there is no evidence to support a reasonable inference, rather than a guess, that additional written warnings or instructions would have prevented plaintiff's accident.  Therefore, the strict liability and negligence claims that are premised on a failure to warn should be dismissed as a matter of law.

28.     Alternatively, if for some reason the failure to warn claims are not dismissed in their entirety based on plaintiff's failure to establish causation, then, at a minimum, the strict liability claim based on a failure to warn should be dismissed as to Engel Industries, Inc. because the "defect" that allegedly required a warning (i.e. the "entrapment hazard") involves a product that was neither manufactured nor sold by Engel Industries, Inc.

6

WHEREFORE, defendant, Engel Industries, Inc. respectfully requests that this Court grants its Motion and enter summary judgment in its favor regarding plaintiff's breach of warranty claims. Moving defendant also requests that this Court enter summary judgment in its favor as to all claims based on an alleged failure to warn. Alternatively, defendant Engel Industries, Inc. requests that this Court enter summary judgment in its favor as to all strict liability claims based on a failure to warn.

RAWLE & HENDERSON LLP

By:_____
        Michael P. Zipfel, Esquire
        Identification No. 57303
        The Widener Building
        One S. Broad Street
        Philadelphia, PA 19107
        Attorneys for defendant,
        Engel Industries, Inc.

Dated:  July 28, 2003

849375 v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN M. BRAUN                    :        CIVIL ACTION
                                   :
        v.                         :
                                   :
SQUARE D COMPANY and               :        NO. 02-4001
ENGEL INDUSTRIES, INC.             :        JURY TRIAL DEMANDED


**DEFENDANT ENGEL INDUSTRIES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     STATEMENT OF FACTS**

Plaintiff Justin Braun filed this products liability lawsuit against defendants

Square D Company and Engel Industries, Inc. to recover damages for personal injuries that he

sustained as a result of an industrial accident.  See Complaint attached hereto as Exhibit "A."  On

April 4, 2001, plaintiff Justin Braun, a sheet metal apprentice employed by Bohrer-Reagan Co.,

suffered a crush injury to the four fingers on his right hand while operating a Bendall press brake

manufactured by defendant Engel Industries, Inc.  Id.

The press brake, which was sold to Bohrer-Reagan Co. in 1969, is an industrial-

size machine that is used to form products out of sheet metal.  See Invoice attached hereto as

Exhibit "B."  The typical operation of the machine requires the operator to hold a piece of sheet

metal in the desired position, to form the appropriate bend, and the machine is then activated by

means of a "foot switch" manufactured by Square D Company.  See Photos of Bendall press

brake and Square D foot switch attached hereto as Exhibit "C" (the stickers depicted in the

photographs were added by plaintiff's employer after the accident); see also Deposition of B.

Ashman, Exhibit "D," at p. 14.

When the press brake was sold in 1969, a Square D foot switch was delivered to Bohrer-Reagan Co. with the machine.  However, the original foot switch broke and its replaced with another Square D foot switch at some point after 1988.  <u>See</u> Dep. of M. Reagan, Exhibit "E," at pp. 23-24; Dep. of B. Ashman, Exhibit "D," at pp. 22-24.

At the time of the accident, the plaintiff was fabricating a piece of duct out of sheet metal.  According to the Complaint, plaintiff's foot "became lodged between the pedal and the safety cover affixed to and forming a part of the foot switch," which activated the press brake while plaintiff's hand was in the path of the "blade."  <u>See</u> Complaint, Exhibit "A," at ¶ 14-15.  During his deposition, plaintiff Justin Braun described the accident as follows:

> Q.    Do you want to explain, again, in your own words what happened?
>
> A.    I was making an H-boot, I finished it up, I ran out of material so I went to grab the H-boot out of the machine and I turned to walk away.  As I turned to walk away, my foot was caught in the pedal.  I looked down to see what was holding my foot and my foot was already in the air.  I put my foot back down on the ground and when I looked up, my hand was caught in the machine.
>
> •      •      •      •
>
> Q.    At the moment that you were pulling your foot out of the pedal, where do you know now your right hand apparently must have been?
>
> A.    Underneath the blade on the metal.
>
> Q.    Is it fair to say that you didn't realize your hand was there?
>
> A.    I knew it was on the metal.
>
> Q.    On the H-boot you mean?
>
> A.    Yes.

849375 v.1

> Q.     It is fair to say that you did not know what part of your hand was under the blade?
>
> A.     No; no.
>
> Q.     Would it be fair to say that you would not deliberately put any part of your hand under the blade at any point in time?
>
> MR. SCHUCHMAN:  Objection to the form.
>
> THE WITNESS:  Yes
>
> BY MR. WAGNER:
>
> Q.     Obviously, you would know that if your hand was under the blade and the blade came down, you would be badly injury?
>
> A.     Yes.
>
> MR. SCHUCHMAN:  Objection to the form.

See Dep. of J. Braun, attached hereto as Exhibit "H," at pp. 71, 75-76.

As part of his negligence and strict liability claims, plaintiff Justin Braun has alleged that Engel Industries, Inc. failed to provide appropriate warnings regarding certain hazards.  To support those allegations, plaintiff produced a report drafted jointly by Ronald D. Schaible and Norman W. Johanson, who have been designated as trial experts.  In that report, plaintiff's experts offer the opinion that the Bendall press brake and the foot pedal were defectively designed.  In addition, plaintiff's warnings expert, Ronald D. Schaible, offers the opinion that Square D and Engel failed to provide appropriate warnings or safety instructions about the possibility of "unintended activation" if the operator's boot became "trapped" in the foot switch.  Unintended activation of the press brake is allegedly a hazard if the operator's hands are in the point of operation.  See Report attached hereto as Exhibit "F."

Because the Bendall press brake was sold in 1969, Engel Industries cannot identify all of the instructions or warnings that were provided with the machine at the time of

3

sale.  Also, plaintiff's employer, Bohrer Regan Company, cannot determine if additional instructions or warnings were provided with the machine, other than those identified during discovery.  <u>See</u> Dep. of M. Reagan, Exhibit "E," at pp. 13 and 79.   Furthermore, plaintiff's supervisor, Bob Ashman, advised during his deposition that Bohrer-Reagan Company did not show written materials regarding the machines in the metal shop to its employees.  Instead, Bohrer Reagan Company relied upon oral instructions to train its employees to operate the various machines.  <u>See</u> Dep. of B. Ashman, Exhibit "D," at pp. 17, 25-26 and 34-35.  Therefore, on the day of the accident, a co-worker, Bob Bova, showed Mr. Braun how to operate the Bendall press brake.  After five minutes, however, Mr. Bova was instructed to return to his own job.  <u>See</u> Deposition of B. Bova, Exhibit "G," at pp. 33.

During his deposition, Justin Braun testified that he did not feel that he  needed written instructions regarding the operation of the press brake because he felt he was "adequately informed about how to operate it."  <u>See</u> Deposition of J. Braun, Exhibit "H," at p. 46. Furthermore, prior to the accident, Justin Braun knew that he needed to be careful while operating the brake press.  <u>See</u> Deposition of J. Braun, Exhibit "H," at p. 49.  In particular, he knew "to be careful about where the blade is at all times."  <u>Id.</u>  He understood "that if you got your hand caught under the blade, you could be injured."  <u>Id.</u> at p. 50.  He understood that if his "hand were under the blade and the blade came down, [he] would be badly injured."  <u>Id.</u> at p. 76. He also understood that if he "had [his] hand in the hand in the point of operation during a cycle that [he] was going to get injured."  <u>Id.</u> at pp. 160-61.

4

## II.  ARGUMENT

### A.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted regarding "all or **any part**" of a claim if "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c). Applying this rule, the Supreme Court delineated the standard applicable to motions for summary judgment in what has been termed "its summary judgment trilogy."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 477 U.S. 242 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 106 S. Ct. 1348, 475 U.S. 574 (1986).  In <u>Celotex</u>, the Court said:

> In our view, the plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

106 S. Ct. at 2553, 477 U.S. at 322-23  (emphasis added).  This language was rephrased in <u>Liberty Lobby</u> when the Court stated "[the summary judgment] standard mirrors the standard for a directed verdict . . . which is that the trial judge <u>must</u> direct a verdict if under the governing law, there can be but one reasonable conclusion as to the verdict."  106 S. Ct. at 2511, 477 U.S. at 243.

The mandatory language of these decisions expresses the Supreme Court's viewpoint that summary judgment is <u>not</u> a harsh sanction to be avoided.  In fact, the Supreme Court stated the "summary judgment procedure is properly regarded not as a disfavored

5

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex</u>, 106 S. Ct. at 2555, 477 U.S. at 325 <u>quoting</u> Fed. R. Civ. P. 11. "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way to accomplish this purpose." <u>Id.</u> at 2553, 477 U.S. at 323. Consequently, "a party resisting a motion for summary judgment must come forward with more than speculation in order to raise a material issue of fact." <u>Keystone Data Systems, Inc. v. James F. Wild, Inc.</u>, 549 F. Supp. 790, 792 (E.D. Pa. 1982); <u>see also</u> <u>Gans v. Mundy</u>, 762 F.2d 338, 343 (3d Cir. 1985), <u>cert.</u> <u>denied</u> 106 S. Ct. 537, 474 U.S. 1010 (1985); <u>Zimmer Paper Products, Inc. v. Berger & Montague, P.C.</u>, 758 F.2d 86, 94 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 106 S. Ct. 228, 474 U.S. 902 (1985). "Therefore, while the moving party bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Davis v. Kambara Kisen Co. Ltd.</u>, 1990 A.M.C. 2825, 2826 (E.D. Pa. 1990), <u>quoting</u> <u>Celotex</u>, 106 S.Ct. at 2553, 477 U.S. 317.

In this case, plaintiff Justin Braun has the burden of proving that the defendants' alleged failure to warn "was the cause in fact and proximate cause of his . . . injuries." <u>Conti v. Ford Motor Co.</u>, 743 F.2d 195, 197 (3d Cir. 1984), <u>cert.</u> <u>denied</u>, 470 U.S. 1028 (1985). Since plaintiff cannot carry that burden, defendant Engel Industries requests that this Court enter summary judgment in its favor as to all claims that are premised on a failure to warn. Alternatively, defendant Engel Industries requests that this Court enter summary judgment in its favor as to the strict liability claim that is premised on a failure to warn because moving

defendant did not manufacture or sell the allegedly defective product that required a warning. Furthermore, the evidence conclusively establishes that the Bendall press brake was sold to plaintiff's employer in 1969. Therefore, plaintiff's breach of warranty claims against Engel Industries are barred by the statute of limitations.

      **B.**     <u>**Plaintiff's Breach of Warranty Claims Are Barred by the Statute of Limitations**</u>

      Under Pennsylvania law, actions for breach of warranty are subject to the four year statute of limitations prescribed in the Pennsylvania Commercial Code. 13 Pa. C.S. § 2725 (2001); <u>see</u> <u>Williams v. West Penn Power Co.</u>, 502 Pa. 557, 570, 467 A.2d 811, 818 (1983) (holding that section 2725 of the Code applies to all breach of warranty actions arising from the sale of goods). Furthermore, a cause of action for breach of warranty accrues when the seller tenders delivery of the goods "regardless of the aggrieved party's lack of knowledge of the breach." <u>Id.</u> at 560 n.3, 467 A.2d at 812 n. 3, <u>quoting</u> 13 Pa.C.S. §2725.

      In this case, the four year statute of limitations applicable to plaintiffs' warranty claims began to run when the Bendall press brake was delivered to his employer. <u>Gorski v. Western Electric Co.</u>, 2000 U.S. Dist. LEXIS 11960, at * 16 (E.D. Pa. Aug. 7, 2000), <u>aff'd</u>, 2002 U.S. App. LEXIS 8848 (3d Cir. May 8, 2002). This occurred in 1969, so plaintiff's breach of warranty claims against Engel Industries, Inc. are clearly barred by the statute of limitations and should be dismissed as a matter of law.

      **C.**     **The Negligence/Strict Liability Claims Premised On A Failure To Warn Should Be Dismissed As A Matter Of Law**

      It is well established in Pennsylvania that, in any products liability action, whether grounded in negligence, breach of warranty or strict liability, the plaintiff must prove that there

was a defect in the product <u>and</u> that the defect proximately caused the injury in question.  <u>Walton v. Avco</u>, 530 Pa. 568, 610 A.2d 454 (1992); <u>Jacobini v. V. & O. Press Co.</u>, 527 Pa. 32, 588 A.2d 476 (1991); <u>Berkebile v. Brantly Helicopter Corp.</u>, 462 Pa. 83, 337 A.2d 893 (1975).  The Pennsylvania Supreme Court has specifically held that a plaintiff cannot recover by proving the existence of a defect without proof of causation.  <u>Berkebile</u>, 462 Pa. at 94, 337 A.2d at 898.

On a number of occasions, the Pennsylvania Supreme Court has considered product liability claims based upon a failure to warn and, in those cases, the Court has consistently held, implicitly or explicitly, that the plaintiff bears the burden of proving that the lack of a warning caused plaintiff's injury.  <u>Phillips v. A-Best Products, Co.</u>, 542 Pa. 124, 131, 665 A.2d 1167, 1171 (1995); <u>see also</u>, <u>Sherk v. Daisy-Heddon, A Division of Victor Comptometer Corp.</u>, 498 Pa. 594, 450 A.2d 615 (1982).  Specifically, the Supreme Court has held that "liability may result only when there is sufficient evidence that additional warnings or reminders may have made a difference."  <u>Conti v. Ford Motor Co.</u>, 743 F.2d 195, 199 (3d Cir. 1984), <u>citing</u> <u>Sherk</u>, 498 Pa. 594, 450 A.2d 615 (1982).  Furthermore, "[i]t is true that the question of proximate cause is generally for the jury.  However, if the relevant facts are not in dispute and the remoteness of the causal connection . . . .clearly appears, the question becomes one of law."  <u>Greiner v. Volkswagenwerk Aktiengesellschaft</u>, 429 F.Supp. 495, 497 (E.D.Pa. 1977), <u>on remand from</u>, 540 F.2d 85 (3d Cir. 1976), <u>quoting</u> <u>Liney v. Chestnut Motors, Inc.</u>, 421 Pa. 26, 29, 218 A.2d 336, 338 (1966).

In <u>Pavlik v. Lane Ltd./Tobacco Exporters International</u>, 135 F.3d 876 (3d Cir. 1998), the Third Circuit Court of Appeals predicted that the Pennsylvania Supreme Court will adopt a rebuttal heeding presumption "that the existence of an adequate warning might have prevented the injury."  Similarly, in <u>Coward v. Owens-Corning Fiberglas Corp.</u>, 729 A.2d 614 (Pa.Super. 1999), <u>appeal</u> <u>granted</u>, 560 Pa. 705, 743 A.2d 920 (1999), a panel of the Superior

8

Court concluded that the Supreme Court will adopt a heeding presumption..[1]  In both of these

cases, the panels suggested that the Pennsylvania Supreme Court has not had an opportunity to

consider whether a heeding should be adopted, which is simply not true.  In Phillips v. A-Best

Products Co., 542 Pa. 124, 665 A.2d 1167 (1995), the Supreme Court barred the plaintiff from

recovering because he failed to establish the element of causation and the decision was issued

several years after the Third Circuit began to speculate about Pennsylvania's adoption of a

heeding presumption.  See Overpeck v. Chicago Pneumatic Tool Co., 823 F.2d 751 (3d Cir.

1987).  Furthermore, in Demmler v. SmithKline Beecham Corp.., 448 Pa.Super. 425, 671 A.2d

1151, appeal denied, 546 Pa. 655, 684 A.2d 557 (1996), a different panel of the Superior Court

rejected the existence of a heeding presumption and held that "[i]n the event that a warning is

inadequate, proximate cause is not presumed."  Id. at 434, 671 A.2d at 1155, citing Odom v.

G.D. Searle & Co., 979 F.2d 1001 (4th Cir. 1992) (a case rejecting the existence of the heeding

presumption under South Carolina law).

As this discussion demonstrates, although two appellate court panels, one federal

and one state, have predicted that a "heeding presumption" will be adopted by the Pennsylvania

Supreme Court, that has not occurred and moving defendant believes that the arguments raised in

support of a heeding presumption do not justify its adoption.  This issue, however, is completely

academic in this case because the plaintiff, Justin Braun, has already admitted that he was aware

of the risk of bodily injury posed by the product.  Under those circumstances, any heeding

presumption is rebutted and the claims premised on a failure to warn should be dismissed as a

matter of law.

---

1        The appeal to the Supreme Court was eventually dismissed due to the filing of a bankruptcy action
involving one of the parties.

In <u>Overpeck v. Chicago Pneumatic Tool Co.</u>, 823 F.2d 751 (3d Cir. 1987), the plaintiff was attempting to mount a new tire onto a wheel rim using a mounting tool and, when he released the pedal attached to the tire changer, "the mounting tool became disengaged from the machine and tire and struck the plaintiff in the eye." <u>Id.</u> at 753.  In the ensuing strict liability case against the manufacturer of the tire changer, plaintiff's expert offered the opinion that the machine should have been equipped with a warning that, if the machine gets out of adjustment, it can operate in a "uneven, jerky" manner, which could "contribute to [the] possibility" that the mounting tool would fly off during the operation of the machine.  <u>Id.</u> at 754.  The Court of Appeals held that this failure to warn claim could not be pursued as a matter of law because the plaintiff could not show that the addition of a warning would have prevented the accident.

For purposes of its analysis, the Court of Appeals assumed that the mounting tool was "operating in an uneven, or jerky manner at the time of the incident." <u>Id.</u> at 755.  The plaintiff, however, testified that "he was aware that the mounting tool might fly off during the operation of the machine, **whether or not** the tool was operating in an uneven or jerky manner." <u>Id.</u> (emphasis added).  Therefore, the Court of Appeals concluded that "[a] warning that advised Overpeck of the possibility of the mounting tool's flying off during uneven or jerky operation would have provided him with no new information and thus would not logically have affected his behavior." <u>Id.</u>  The Court noted that even if a heeding presumption were adopted, the plaintiff's testimony rebutted that inference and the heeding presumption "fell completely from the case.  All that remained thereafter, then, was testimony offered by Overpeck concerning his awareness of the relevant danger." <u>Id.</u> at 756.  Because the plaintiff was aware of the relevant danger, the plaintiff could not establish the element of causation as a matter of law.  <u>See</u> also, <u>Pavlik</u>, 135 F.3d at 881.

10

In this case, plaintiff's experts have offered the opinion that Engel Industries should have provided a warning about the dangers of "unintended activation" caused by a work boot being trapped in the foot pedal. As in Overpeck, however, the plaintiff already had knowledge of the relevant danger. In particular, plaintiff knew that he would be injured if his hand was present in the point of operation when the machine activated, **whether or not** activation occurred because his foot was stuck in the pedal. Therefore, a warning about the risks associated with "unintended activation" would not have provided the plaintiff with any new information, so there is no basis to conclude that such a warning would have changed plaintiff's behavior.

In their report, plaintiff's liability experts also suggest that "[a] reminder is needed to assure awareness of the hazard at the proper time," suggesting that an on-product reminder about the known danger was needed. However, in Conti v. Ford Motor Co., 743 F.2d 195 (3d Cir. 1984), the Court of Appeals directly addressed this type of theory. In Conti, the plaintiff-husband turned the ignition key to start his car, without disengaging the manual clutch, and the car lurched backwards, causing injury to his wife. The plaintiffs contended that the car was defective because the manufacturer failed to place a reminder warning in the car's interior. However, the Court of Appeals entered judgment in favor of the manufacturer as a matter of law because the evidence was insufficient "to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident:"

> There is absolutely no evidence in the record to suggest that Mr. Conti would have paid any greater attention to what he was doing when starting the car if additional warnings were contained in Ford's operator manual, or even if a sticker reminding the operation to disengage the clutch before starting the car in gear was prominently displayed in the interior of the car. Rather, the jury's conclusion was based on the mere

11

> speculation that if Mr. Conti's eyes had caught a
> sticker warning him to depress the clutch pedal as
> he was taking to his wife, he may have remembered
> to either shift the car to neutral or to disengage the
> clutch prior to starting the car. Ford cannot be held
> liable on a failure-to-warn theory merely because a
> jury concludes that more warnings are needed to
> remind drivers of the intricacies of standard
> transmissions. Rather, liability may result only
> when there is sufficient evidence that additional
> warnings or reminders may have made a difference.
> *See, e.g., Sherk v. Daisy-Heddon, A Division of
> Victor Comptometer Corporation*, 498 Pa. 594, 450
> A.2d 615 (1982).

Id. at 198-199.

Based on the Conti decision, it is clear that the plaintiff in this case cannot

establish the element of causation by asserting that an on-product reminder may have prevented

the accident. Furthermore, plaintiff cannot show that additional written instructions or warnings

would have prevented the accident because, even if they were provided at the time of sale, they

would not have been shown to the plaintiff.

In Sherk v. Daisy Heddon, A Division of Victor Comptometer Corporation, 498

Pa. 594, 450 A.2d 615 (1982), a fourteen year old boy shot his friend in the head with a "B-B"

fired from his air rifle, which caused his friend's death. The administrator of the Estate of James

Sherk filed suit against the manufacturer of the air gun and, at trial, the plaintiff asserted that the

manufacturer "failed to provide an adequate warning of the rifle's lethal propensity and that the

alleged failure to warn of the lethal propensity of the air rifle had caused James Sherk's death."

Id. at 597, 450 A.2d at 616.

On appeal, the Supreme Court entered judgment in favor of the manufacturer

because the plaintiff could not establish that "the injuries sustained were proximately caused by

the product's defect." Id. at 598, 450 A.2d at 617. First, as to the fourteen year old boy who

fired the gun, the Supreme Court held that the failure to provide additional warnings could not be a proximate cause of the accident.  The accident occurred because the boy accidentally pushed the safety button from on to off.  However, the plaintiff could not establish that the addition of warnings would have changed the boy's behavior because he was already aware that a "B-B fired from the Power King could blind a person and that he should never point a gun at anyone." Id.

Second, the Supreme Court held that the plaintiffs could not "prevail on the theory that if the parents of Robert Saenz had known of the Power King's lethal propensity, they would not have permitted Robert Saenz to have possession of the Power King and thus be in a position to misuse it." Id. at 601, 450 A.2d at 619.  The Court rejected this theory because, prior to the accident, the parents had not read the operation and instruction manuals that came with the gun.  Thus, the Court held that "the alleged 'defect' in the warnings accompanying the Power King Rifle did not cause James Sherk's death." Id.

Based on the Sherk decision, plaintiff Justin Braun cannot establish that a lack of warnings or instructions caused his accident because, like the boy in Sherk, he already knew of the risk of injury posed by the product.  Also, the evidence shows that, even if written warnings or instructions were provided at the time of sale, those documents would not have been shown to the plaintiff.  Instead, plaintiff's employer relied solely upon oral instructions to train its employees to operate the machines in the metal shop.  See Dep. of B. Ashman, Exhibit "D," at pp. 17, 25-26 and 34-35.  Therefore, as in Sherk, there is no basis to conclude that the presence of warnings or instructions in a manual or other written document would have made a difference. Thus, plaintiff cannot establish the element of causation and all claims based on a failure to warn should be dismissed as a matter of law.

13

**D.    Plaintiff's Strict Liability Claims Premised On A Failure To Warn Should Be Dismissed Because Engel Industries, Inc. Did Not Manufacture Or Sell The Allegedly Defective Foot Pedal**

Under Pennsylvania law, if an injury is caused by a defective product, the doctrine of strict liability imposes liability on all sellers in the chain of distribution. Snyder v. I.S.C. Alloys, Ltd., 772 F.Supp. 344 (E.D.Pa. 1991), citing Bialek v. Pittsburgh Brewing Co., 430 Pa. 175, 187-188, 242 A.2d 231, 236 (1966). In this case, however, defendant Engel Industries did not manufacture or sell the foot pedal that allegedly necessitated a warning. Therefore, if for some reason this Court does not dismiss plaintiff's failure to warn claims in their entirety due to plaintiff's inability to prove the element of causation, then, at a minimum, the strict liability claim based on a failure to warn should be dismissed as to Engel Industries, Inc.

According to plaintiff's liability experts, the hazard that required a warning in this case was the risk of "foot entrapment." This alleged hazard, however, was caused by a "defect" in the foot pedal, which was neither manufactured nor sold by Engel Industries. It is true that Engel Industries provided a Square D foot pedal when the press brake was sold in 1969 and it is believed that, when the foot switch was replaced after 1988, it was replaced with a similar model. However, Engel Industries did not manufacture or sell the foot switch that was added in 1988, approximately 20 year after the initial sale. Therefore, as to the replacement foot pedal and any warnings that were needed regarding the interaction of that pedal with the press brake, Engel's role is akin to that of a designer. Accordingly, since the doctrine of strict liability only applies to manufacturers and sellers (i.e. those in the chain of sale), plaintiff, at most, can pursue a negligence action against Engel Industries, Inc. regarding the need to warn about defects in the pedal. See Snyder v. ISC Alloys, Ltd., 772 F.Supp. 244 (W.D.Pa. 1991) (Section 402A strict liability does not apply to a defendant that provides design and technical advice); see also

14

Firestone Steel Products Co. v. Barajas, 927 S.W. 2d 608 (Tex. 1996) ("If the original designer of a system or prototype gives the design to another party, this action alone is not enough to impose liability under a strict products liability theory."); Piscitello v. Hobart Corp., 799 F.Supp. 224, 225-26 (D.Mass. 1992) (applying Mass. law and holding that where a defendant did not manufacture, distribute or sell a particular product at issue, but rather only designed the original product after which most of the products had been patterned over the years, does not impose strict liability upon the original designer).

For the reasons discussed above, plaintiff cannot establish the element of causation to support a failure to warn claim, so all claims based on a failure to warn should be dismissed as a matter of law. Alternatively, plaintiff's strict liability claim premised on a failure to warn should be dismissed as to Engel Industries, Inc.

## III.    CONCLUSION

Based on the foregoing, defendant Engel Industries, Inc. respectfully requests that this Court grant its Motion and enter summary judgment in its favor regarding plaintiff's breach of warranty claims. Moving defendant also requests that this Court enter summary judgment in its favor as to all claims based on an alleged failure to warn. Alternatively, defendant Engel Industries, Inc. requests that this Court enter summary judgment in its favor as to all strict liability claims based on a failure to warn.

RAWLE & HENDERSON LLP


By:_____
        Michael P. Zipfel, Esquire
        Identification No. 57303
        The Widener Building
        One S. Broad Street
        Philadelphia, PA 19107
        Attorneys for defendant,
Dated:   July 28, 2003                    Engel Industries, Inc.

15

849375 v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN M. BRAUN           :    CIVIL ACTION
                             :
      v.                  :
                             :
SQUARE D COMPANY and   :    NO. 02-4001
ENGEL INDUSTRIES, INC.    :    JURY TRIAL DEMANDED

## ORDER

      AND NOW, this ____ day of _____, 2003, upon consideration of the

Motion for Partial Summary Judgment filed by defendant Engel Industries, Inc. and any response

thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby

entered in favor of Engel Industries, Inc. as to Count V of the Complaint (Breach of Warranties).

It is further ORDERED that Summary Judgment is hereby entered in favor of Engel Industries,

Inc. as to all claims that are based on a failure to warn.

                      **BY THE COURT:**

                               _____

                                                J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN M. BRAUN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SQUARE D COMPANY and | : | NO. 02-4001 |
| ENGEL INDUSTRIES, INC. | : | JURY TRIAL DEMANDED |

## <u>ALTERNATIVE ORDER</u>

AND NOW, this ____ day of _____, 2003, upon consideration of the

Motion for Partial Summary Judgment filed by defendant Engel Industries, Inc. and any response

thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby

entered in favor of Engel Industries, Inc. as to Count V of the Complaint (Breach of Warranties).

It is further ORDERED that Summary Judgment is hereby entered in favor of Engel Industries,

Inc. as to the strict liability claim premised on a failure to warn.

**BY THE COURT:**

_____
                                                   J.

<u>CERTIFICATE OF SERVICE</u>

I, Michael P. Zipfel do hereby certify that a copy of the foregoing Motion for Partial Summary Judgment of Defendant Engel Industries, Inc. was sent via first class mail, postage pre-paid on July 28, 2003 to the following:

Peter F. Schuchman, Jr., Esquire          John Patrick Kelley, Esquire
Kozloff & Stoudt                          Kelley, Jasons, McGuire & Spinelli
2640 Westview Drive                       Suite 1500, Centre Square West
PO Box 6286                               1500 Market Street
Wyomissing, PA 19610                      Philadelphia, PA 19102


RAWLE & HENDERSON, LLP


By:_____
          Michael P. Zipfel, Esquire
          Identification No. 57303
          One S. Broad Street
          The Widener Building
          Philadelphia, PA 19107