**KELLEY JASONS McGUIRE & SPINELLI, L.L.P.**
**BY: W. Matthew Reber, Esquire**
     **Angela M. Coll, Esquire**
**Attorney I.D. No. 67035/87488**
**Suite 1500, Centre Square West**
**1500 Market Street**
**Philadelphia, PA  19102**
**(215) 854-0658**

| | |
|---|---|
| **JUSTIN M. BRAUN,** | :IN THE UNITED STATES |
|            Plaintiff, | :DISTRICT COURT FOR THE |
|   vs. | :EASTERN DISTRICT OF |
| | :PENNSYLVANIA |
| **SQUARE D COMPANY and** | : |
| **ENGEL INDUSTRIES, INC.,** | :Docket No.  02-4001 |
|            Defendants. | : |
| | :JURY TRIAL DEMANDED |

### DEFENDANT SQUARE D COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, Square D Company, by and through its attorneys Kelley Jasons McGuire & Spinelli, L.L.P., respectfully moves this Honorable Court for Summary Judgment in their favor and against plaintiffs and all other parties or cross-claims, and in support or its motion Defendant relies upon the attached Memorandum of Law which is incorporated by reference herein.

    I.    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This product liability action was commenced by Complaint filed on June 20, 2002 (Copy of Complaint is attached hereto as Exhibit "A"). By his Complaint, Plaintiff Justin Braun alleges personal injuries resulting from a workplace injury which he sustained in the course of his employment as a sheet metal worker. Specifically, Braun

alleges that his hand was crushed by the ram of a press brake machine which he had been using to bend metal pieces for his employer, the Bohrer-Reagan Company.

Braun sued the manufacturer of the press brake machine (Engel Industries, hereinafter "Engle") and Square D Company ( hereinafter "Square D"). Plaintiff's liability claims against Square D are premised upon the allegation that it manufactured a foot switch which was attached to the press brake and which was used to actuate the machine. The Complaint asserts similar negligence, strict liability and breach of warranty claims against both Engle and Square D.

The subject press brake was manufactured in 1969 and was delivered to the Bohrer-Reagan Company that same year (Deposition of Herbert Fischer, Pg. 44:11 to 44:19; pertinent portion is attached hereto as Exhibit "B"). It was supplied with a Square D AW-2 foot switch attached as a component part. The machine was allegedly equipped with an identical replacement foot switch by Bohrer-Reagan Company personnel in 1988 (Deposition of Michael J. Reagan, Pgs. 23:16 to 24:21; pertinent portions attached hereto as Exhibit "C"). Square D played no role in the design, manufacture or supply of the Engle press brake or the alleged replacement by Bohrer-Reagan in 1988. Rather, the company has manufactured a range of electrical control products (including foot switches) which are selected by equipment manufacturers or industrial users and sold through independent distributors. (Report of James F. McElwee, 7/18/03, at pg. 2; attached hereto as Exhibit "D").

On the date of the accident, Braun was employed by Bohrer-Reagan as a sheet metal apprentice. Shortly after arriving at work on April 4, 2001, he was told to use the

press brake in order to make bends on sheet metal pieces. He had never used the press brake machine prior to the date of the accident, and was given only five minutes of "training" on the machine by a fellow apprentice before operating it. (See Deposition of Robert Bova, pg. 71:6 to 71:14; pertinent portion attached hereto as Exhibit "E")

At some point in the metal fabrication process, Braun placed his right hand in the machine's point of operation. Braun was admittedly aware of the danger associated with placing one's hand within the point of operation:

> Q: Did Mr. Bova tell you anything that you had to be careful about?
>
> A: No.
>
> Q: Did it seem to you on your own that there was anything that you had to be careful about?
>
> A: Yes.
>
> Q: What was that?
>
> A: Just to be careful about where the blade is at all times.
>
> Q: Even though it may seem obvious, tell me what it was that you realized you needed to be careful not to do?
>
> A: That it was just a machine. We always learn safety on how to use machinery, so I figured I needed to take precaution on whatever I do.
>
> Q: Was it obvious to you that you could get injured on this machine if you were not careful using it?
>
> A: I don't know, I didn't really think about it.
>
> Q: When you began using the machine, Jay, did you understand that if you got your hand caught under the blade, you could get injured?
>
> A.: Yes, I understand that.
>
> Q: Did you understand it then when you used it?

    A:  Yes.

    Q:  You saw the machine bending metal; correct?

    A:  Yes.

    Q:  Was it obvious to you that if this machine could bend metal it could also bend or break your fingers?

    A:  Yes.

    Q:  Is it fair to say that no one really had to tell you that?

    A:  Yes.

(Deposition of Justin Braun, Pgs. 49:1 to 50:24; pertinent portion attached hereto as Exhibit "F"). Square D now moves for Summary Judgment based upon Plaintiff's evident failure to establish even a prima facie liability case against it under Pennsylvania law.

## II.    <u>SUMMARY OF ARGUMENT</u>

Less than a month after he was hired as a sheet metal apprentice, plaintiff Justin Braun used an industrial press brake for the first time, following approximately five minutes of "training" by a fellow apprentice. Despite his admitted subjective awareness of the danger, and without any plausible explanation, he placed his right hand within the machine's point of operation and was injured when the press cycled. He thereafter commenced this action against the manufacturer of the press (Engel Industries) and Square D Company ("Square D").

Braun's claims against Square D are limited to its alleged role as the manufacturer of a foot switch which was attached to the press brake at the time of the accident. Under the circumstances presented, clear Pennsylvania law precludes such claims against a mere

component part manufacturer. Further, Plaintiff's claims fail because the record lacks evidence that the defects alleged proximately caused his injury. Finally, the Breach of Warranty claims set forth in the Complaint are barred by Pennsylvania's four-year statute of limitations.

### III. LEGAL ARGUMENT

#### A. Summary Judgment Is Appropriate When There Are No Genuine Issues As To Any Material Fact

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c) (emphasis added). As the United States Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving

party can discharge the burden by "showing…that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will affect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence or make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393. However, if the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

> B. **Plaintiff has Failed to Establish Essential Elements of a Product Liability Claim Under Pennsylvania Law, Requiring Dismissal of all Claims Against Square D.**

Plaintiff has asserted claims against Square D sounding in negligence, strict liability and breach of warranty. Beyond the conclusory allegations set forth in the complaint, however, there is no evidence in the record to support the claims. First, as a mere component part manufacturer, Square D is not subject to strict liability or negligence claims under Pennsylvania law given the circumstances of this case. Further, the record is plainly lacking any evidence that some alleged defect in the foot switch was

a proximate cause of Braun's injury. Finally, plaintiff's breach of warranty claims are barred by the statute of limitations.

> **1. As a mere component part manufacturer, Square D is not liable for plaintiff's injury as a matter of law.**

The undisputed facts of record document Square D's limited role as a component part manufacturer in this case. Square D played absolutely no role in the design, manufacture or supply of the press brake and likewise had no role in the placement of the foot switch onto the machine. The foot switch allegedly involved in the accident was one of several different models available to the equipment manufacturer and/or the industrial user depending upon their particular preferences or specifications. There is no evidence that Square D had any communications with Engle or Bohrer-Reagan personnel regarding the foot switch or the press brake prior to the accident. Simply put, Square D did nothing more than manufacture a means of activating the machine – the specific details of how that component was incorporated into the machine were determined exclusively by Engle and/or Bohrer-Reagan.

Under such circumstances, well developed Pennsylvania law recognizes limits upon the liability of a manufacturer of a component part that is assembled by another party and the dangers are associated with the use of the finished product. Jacobini v. V & O Press Company, 527 Pa. 32, 588 A.2d 476 (1991). The facts of Jacobini are virtually indistinguishable from this case. As here, the plaintiff in Jacobini was injured while operating a power press and thereafter sued the press maker as well as the manufacturer of a component die set. In affirming a directed verdict in favor of the component part (die set) manufacturer, The Pennsylvania Supreme Court held:

>Even assuming, arguendo, that the testimony presented by [Plaintiff's] witness could be construed as indicating a need for barrier guards as part of a point of operation safeguards, [Plaintiff] would be placed in the untenable position of establishing that the die set manufacturer, as the manufacturer of a mere component part of a completed die, would have a duty to warn the end user of dangers associated with the using die in a power press manufactured by yet another party. As noted earlier, however, limits on a manufacturer's duty to warn come into play where, as in the present case, the manufacturer supplies a mere component of a final product that is assembled by another party and dangers are associated with the use of the finished product. Wenrick v. Schloemann-Siemag Aktiengesellschaft, [532 Pa. 1, 564 A.2d 1244 (1989)]. This is particularly true where the component itself is not dangerous, and where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being a matter of which the component manufacturer has no control. Id.

588 A.2d at 479.

Jacobini followed the Supreme Court's prior decision in Wenrick, which similarly limited the liability of a manufacturer of a component part which is incorporated into a finished product. Again, the injury in Wenrick related to the use of an industrial press and related claims against, *inter alia*, a maker of a component part electrical system installed on the finished product. Noting that the component part electrical system manufacturer played no role in the manufacture, design or installation of the press itself, the Court entered judgment n.o.v. in favor of the defendant.

Thus, on two separate occasions in cases essentially indistinguishable from this one, the Pennsylvania Supreme Court has unequivocally limited the liability of a mere component part manufacturer in negligence and strict liability. The law is clear: where a defendant simply supplies a component part which is later integrated into a product, and where the dangers asserted are associated with

the finished product, there is no viable product liability claim. Plainly, there is nothing dangerous or defective about the foot switch involved in this case in and of itself. At best, plaintiff's claim against Square D is limited to the allegation that any danger is related to the use of the product on the finished machine. As noted in Jacobini, potential liability under such circumstances "would carry the component part manufacturer's liability to an unwarranted and unreasonable extreme." 588 A.2d at 480.[1]

**2. Plaintiff's product liability claims against Square D must be dismissed based upon the absence of any evidence implicating a purported defect in the foot switch as a proximate cause of the injuries alleged.**

Proximate causation is an essential element of any product liability claim under Pennsylvania law. Thus, even where a plaintiff can prove a product defect, there can be no recovery absent proof that the defect was a proximate cause of the injuries alleged. *See,* McKenna v. E.I. Du Pont DeNemours and Company, 1988 WL 71271 (E.D.Pa 1988); Dambacher v. Mallis, 336 Pa.Super. 22, 485 A.2d 408 (Pa.Super.1984); Sherk v. Daisy-Heddon, 450 A.2d 615 (Pa. 1982); Carrecter v. Colson Equipment Co., 499 A.2d 326 (Pa.Super. 1985); Gumbs v. International Harvester, Inc., 718 F.2d 88 (3d Cir. 1983).

---

[1] In Colegrove v. Cameron Machine Co., 172 F.Supp. 2d 611 (W.D. Pa. 2001), the District Court for the Western District declined to apply Jacobini and Wenrick to a product liability claim asserted against a component part manufacturer. Colegrove involved an injury resulting from the use of a press machine which was activated by an unguarded foot switch. Colegrove's limitations on the component part defense articulated by the Pennsylvania Supreme Court in Jacobini and Wenrick is not applicable to this case. As the court in Colegrove recognized, a component part manufacturer does not have a duty to warn of an open and obvious danger associated with the use of the product. 172 F.Supp. 2d at 626. In this case, the danger of operating the press with appendages in the machine's point of operation was not only objectively open and obvious, but subjectively known to Braun. (*See,* Point 2, *infra*). Further, and even if it was applicable to this case, Colegrove is not controlling authority (The Federal Court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court). *See* Carrasquilla v. Mazda Motor Corp., 197 F.Supp.2d 169 (M.D.Pa. 2002); Williams v. State Farm Mutual Automobile Insurance Company, 763 F.Supp. 121 (E.D.Pa. 1991); Bradford v. American Media Operations, Inc., 882 F.Supp. 1508 (E.D.Pa. 1995)

The facts relating to the occurrence in this case are remarkably straightforward. Braun had never used the press brake prior to the date of the accident and was given about five minutes of training before operating it. Nonetheless, by his own admission, Braun knew and understood that the user should not place appendages (*e.g.* hands) within the point of operation of the press brake. He was thus subjectively aware of the danger associated with the use of the machine and, specifically the likelihood of serious personal injury related to placing one's hands in the point of operation:

> Q: Did Mr. Bova tell you anything that you had to be careful about?
>
> A: No.
>
> Q: Did it seem to you on your own that there was anything that you had to be careful about?
>
> A: Yes.
>
> Q: What was that?
>
> A: Just to be careful about where the blade is at all times.
>
> Q: Even though it may seem obvious, tell me what it was that you realized you needed to be careful not to do?
>
> A: That it was just a machine. We always learn safety on how to use machinery, so I figured I needed to take precaution on whatever I do.
>
> Q: Was it obvious to you that you could get injured on this machine if you were not careful using it?
>
> A: I don't know, I didn't really think about it.
>
> Q: When you began using the machine, Jay, did you understand that if you got your hand caught under the blade, you could get injured?
>
> A.: Yes, I understand that.
>
> Q: Did you understand it then when you used it?

A:  Yes.

Q:  You saw the machine bending metal; correct?

A:  Yes.

Q:  Was it obvious to you that if this machine could bend metal it could also bend or break your fingers?

A:  Yes.

Q:  Is it fair to say that no one really had to tell you that?

A:  Yes.

Braun Dep. Pgs. 49:1 to 50:24 (pertinent portions attached hereto as Exhibit "F"). Despite this subjective awareness of the risk, Braun in fact placed his hand within the machine's point of operation. Simply put, this deliberate action – not any supposed defect in the foot switch – caused the injury.

This inescapable fact is fatal to plaintiff's claims. It cannot be seriously contended that the lack of an adequate warning caused a given injury when the evidence clearly establishes that a warning would not have made a difference. "The test for proximate cause is whether the defendant's conduct was a 'substantial cause' or an 'insignificant cause' and the determination of the issue simply involves the making of a judgment as to whether the defendant's conduct, although a cause in the 'but for' sense, is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible." Nowak By and Through Nowak v. Faberge, U.S.A., Inc., 812 F.Supp. 492 (M.D.Pa. 1992) (quoting Ford v. Jeffries, 474 Pa. 588, 379 A.2d 111 (1977)). Moreover, in order to reach a jury under a failure to warn theory, the evidence must be such as to support a reasonable inference, rather than a guess, that the

existence of an adequate warning might have prevented the injury.  Pavlik v. Lane Limited/Tobacco Exporters International, 135 F.3d 876, 881 (3d Cir. 1998).  In this case, plaintiff simply cannot meet this burden since, as he readily concedes, he was fully aware of the danger (placing his hands in the zone of the blade) that ultimately caused his injury.  See Colgrove, *supra*; See also Sherk v. Daisy-Heddon, *supra*, (no duty to warn if danger is open and obvious).

Neither can plaintiff rely upon the "heeding presumption" which some courts have applied in the failure to warn context.  *See, e.g.* Coward v. Owens-Corning Fiberglass Corp., 729 A.2d 614 (Pa.Super. 1999)  Whatever application the heeding presumption may have in some cases (particularly in the toxic tort context) it is wholly inapplicable to cases, like the present one, where a plaintiff is subjectively aware of the dangers associated with his conduct, proceeds despite such awareness and is injured thereby.  See Pavlik *supra*; See also Colgrove, *supra*.

Finally, the fatal defect in plaintiff's liability claims against Square D is equally apparent whether based upon a failure to warn or defective design theory.  Even if there was a plausible design defect case, Braun's volitional act of putting his fingers in an area where he fully knew they should not be eliminates any such defect as a proximate cause of the injury.  Again, Braun's own testimony confirms this fact:

> Q:  My question to you was whether you knew if you got your hands in the way of a moving blade, you could get an injury regardless of the footswitch; do you understand that?
>
> A:  Yes.

Braun Dep. Pg. 159:11 to 159:25; (pertinent portions attached hereto as Exhibit "G").
This candid admission exposes the absence of proof of proximate cause. As there is no such evidence in the record, the claims must be dismissed.

### C. **Plaintiff's Breach of Warranty Claim is Barred by the Statute of Limitations**

Under Pennsylvania law, claims for breach of warranty are subject to the four-year statute of limitations set forth at 42 Pa. C.S.A. § 5525. *See* Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 291 (3d Cir. 1988); Lease Navajo, Inc, v. Cap Aviation, Inc., 760 F.Supp. 455 (E.D.Pa. 1991). An action for breach of warranty is properly time-barred if it is brought more than four years after a plaintiff takes delivery of an allegedly defective product. Iudicello v. Aldens, Inc., 465 F.Supp. 1308 (E.D.Pa. 1979) (citing Rufo v. The Bastian-Blessing Co., 417 Pa. 107, 207 A.2d 823 (1965).

The foot switch allegedly involved in Plaintiff's accident is an AW-2 model manufactured by Square D in 1967. This switch was installed by Engle before the machine was supplied to Bohrer-Reagan in 1969. According to Michael Reagan, the original switch broke in approximately 1988, and the company installed an identical AW-2 at that time, which was allegedly involved in Plaintiff's accident. Thus, by any measure, the foot switch at issue was delivered no later than 1988. Braun's Complaint was filed approximately fourteen years later, in June of 2002. The breach of warranty claims asserted therein are clearly time-barred.

The date of the accident is irrelevant for purposes of the statute of limitations. Specifically, Pennsylvania courts have held that the date on which a plaintiff learned of the alleged breach is irrelevant as to this claim, since the discovery rule does not apply to breach of warranty claims. O'Brien v. Eli Lilly & Co., 668 F.2d 704 (3d Cir. 1981); Brownstein v. Dow Corning Wright, 678 F.Supp. 1151 (E.D.Pa. 1988). As the court explained in Iudicello, a breach of warranty suit must be brought within four years of the breach of warranty, regardless of the time of the accident directly giving rise to the damages claimed. Iudicello, *supra*. (citing Rufo, *supra*).

Thus, under any analysis, plaintiff's breach of warranty claims is barred by the statute of limitations and should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant, Square D Company, respectfully requests that this Honorable Court enter Summary Judgment in its favor and against Plaintiff and all other parties or cross-claims.


Respectfully submitted,

**KELLEY JASONS McGUIRE & SPINELLI, L.L.P.**


BY: _____
     W. MATTHEW REBER
     ANGELA M. COLL
     Attorneys for Defendant,
     Square D Company

- 15 -

Case 2:02-cv-04001-JKG Document 23 Filed 07/28/2003 Page 15 of 15