Peter F. Schuchman, Jr., Esquire
Pa. Attorney ID# 69343
KOZLOFF STOUDT
2640 Westview Drive
PO Box 6286
Wyomissing, PA   19610
(610) 670-2552                              Attorneys for Plaintiff

---

| | |
|---|---|
| JUSTIN M. BRAUN, | : IN THE UNITED STATES DISTRICT |
| | : COURT FOR THE EASTERN DISTRICT OF |
| Plaintiff | : PENNSYLVANIA |
| | : |
| v. | : Docket No. 02-CV-4001 |
| | : |
| SQUARE D COMPANY and | : JURY TRIAL DEMANDED |
| ENGEL INDUSTRIES, INC., | : |
| Defendants | : |

---

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT SQUARE D COMPANY'S MOTION FOR SUMMARY JUDGMENT

---

I   STATEMENT OF QUESTION INVOLVED

SHOULD THE COURT DENY SQUARE D'S SUMMARY JUDGMENT MOTION WHERE:

    A.   SQUARE D ADMITTED THAT ITS FOOT SWITCH WAS AN INAPPROPRIATE SIZE FOR THE PLAINTIFF'S STEEL TOED BOOTED FOOT,

    B.   THE FOOT SWITCH ENTRAPPED THE PLAINTIFF'S FOOT CAUSING THE UNINTENDED ACTIVATION OF THE PRESS BRAKE TO WHICH IT WAS ATTACHED, AND

    C.   SQUARE D DID NOT SUPPLY ANY WARNINGS TO THE OWNER OR USER, ON OR WITH THE FOOT SWITCH, OF THE DANGERS ASSOCIATED WITH THE USE OF THE FOOT SWITCH WHEN ATTACHED TO A PRESS BRAKE?

SUGGESTED ANSWER: Yes.

II      STATEMENT OF THE CASE

Justin Braun lost the four fingers on his dominant right hand as a result of their having been crushed in a sheet metal press brake ("Press Brake") manufactured by Engel Industries, Inc. ("Engel"). After Justin finished fabricating a small HVAC duct accessory known as an "H-Boot", the Press Brake unexpectedly activated as Justin attempted to extract his foot from the foot switch ("Foot Switch") manufactured by Square D Company ("Square D") in which it had become lodged. The Foot Switch was the sole means of actuating the Press Brake even though hand switch actuation could have been a useful means of actuation while keeping the operator's fingers away from the point of operation. (See Deposition of Engel Corporate Designee, Herbert Fischer, attached hereto as Exhibit "A", pp. 47, 53, 78-79, 166, 173). Square D's Foot Switch was specified by Engel as the means of actuation and was supplied by Engel when it sold the Press Brake to Bohrer-Reagan Company, owner of the duct fabrication shop where Justin Braun was working.[1] Square D's Corporate Designee[2], admitted that the Foot Switch is not appropriate for certain size steel toed boots, that such boots may become lodged in the Foot Switch and

---

[1] The Foot Switch in which Justin Braun's foot became entrapped was not the original switch supplied by Engel. It was a replacement switch manufactured by Square D that was identical to the model originally supplied by Engel. (See Deposition of Michael Reagan, attached hereto as Exhibit "B", pp. 23-24)(See also, Deposition of Herbert Fischer, Exhibit "A", pp. 92-93).

[2] James McElwee, P.E., was produced by Square D as its Rule 30(b)(6) designee and later identified as its testifying liability expert.

that it was possible that Justin Braun's foot became lodged in the Foot Switch. (See Square D Corporate Designee Deposition, attached hereto as Exhibit "C", pp. 54-59, 109-110). Square D's designee further admitted that Square D did not supply any warnings or safety instructions on the Foot Switch. (See Square D Corporate Designee Deposition, Exhibit "C", p. 60). Such warnings could include, <u>inter alia</u>, warnings of inadvertent activation, the advisability of removing one's foot from the foot switch between activations (i.e., not "riding the pedal"), using only appropriately sized foot switches and the possibility that the Foot Switch could activate when, as here, the Foot Switch was not touching the floor.

Justin Braun has produced the report of his liability experts, Norman Johanson and Ronald Schaible, P.E., of Robson Lapina, a copy of which is attached hereto as Exhibit "D", and incorporated by reference as fully as though the same were set forth verbatim. Justin's experts will opine, <u>inter alia</u>, that the Foot Switch was defective in that it entrapped Justin's boot because the Foot Switch entry area was too small for steel toed boots the size of Justin Braun's boots. This resulted in the Foot Switch pedal, which was spring loaded, to clamp onto Justin's boot at a position closer to the actuation point than if the pedal were in its resting position. When the Foot Switch traveled off of the floor along with Justin's foot as he tried to extract it, the movement against the clamping resistence, weight of the Foot Switch, pull of the switch's power cable and pre-existing partial depression of the Foot Switch caused the switch to actuate the Press Brake and crush Justin's fingers. Justin did not expect the Foot Switch to entrap his foot and he did not intend for the Foot Switch to actuate when it did.

Justin's experts will also opine that the Foot Switch was defective because it did not contain warnings of the hazards of unintended actuation caused by the aforementioned entrapment hazard.

Square D has filed a Motion for Summary Judgment alleging essentially that it had no duty to warn Justin Braun of any dangers associated with the use of its Foot Switch in connection with the Press Brake because it is a mere component part manufacturer and because it claims that Justin was aware of the danger of placing his hands within the Press Brake point of operation. Justin files this Brief in opposition to Square D's Motion because Square D ignores Justin's evidence that the Foot Switch was defective in design, as well as in warnings, because the hazard of unintended actuation caused by entrapment that caused Justin's harm was neither obvious nor known by Justin and because a component part manufacturer is not excused from its duty to warn if it can foresee a use of its product that will create a danger. For the reasons set forth at length below, Justin Braun, requests that this Court deny Square D's Motion.

III   <u>ARGUMENT</u>

THE COURT SHOULD DENY SQUARE D'S SUMMARY JUDGMENT MOTION BECAUSE (A) IT HAS ADMITTED THAT ITS SWITCH WAS OF AN INAPPROPRIATE SIZE FOR THE PLAINTIFF'S STEEL TOED BOOTED FOOT, (B) THE EVIDENCE DEMONSTRATES THAT THE FOOT SWITCH WAS DEFECTIVE IN THAT IT ENTRAPPED THE PLAINTIFF'S FOOT CAUSING THE UNINTENDED ACTIVATION OF THE PRESS BRAKE TO WHICH IT WAS ATTACHED AND (C) THE FOOT SWITCH MANUFACTURER DID NOT SUPPLY ANY WARNINGS TO THE OWNER OR USER, ON OR WITH THE FOOT SWITCH, OF THE DANGERS ASSOCIATED WITH THE USE OF THE FOOT SWITCH WHEN ATTACHED TO A PRESS BRAKE.

This Court may only grant summary judgment, "if the pleadings, depositions, answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that Engel, as the moving party, is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Square D bears the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If Square D fails to meet this burden under Rule 56(c), its motion must be denied.

Furthermore, if Justin Braun, as the non-moving party, produces evidence such that a reasonable jury could return a verdict against Square D, an issue of genuine fact exists and the court must deny Square D's motion Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). When deciding whether a genuine issue of fact exists, this Court is to believe the evidence of Justin Braun, and must draw all reasonable inferences in the light most favorable to him. Id. at 255. Moreover, a Court must not consider the credibility or weight of the evidence presented, even if the quantity of the moving party's evidence far outweighs that of the non-movant. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 S. 2d 1358, 1363 (3d Cir. 1992). Nevertheless, a party opposing summary judgment must do more than rest upon the mere allegations, general denials, or vague statements. Trap Lock Industries, Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992). If the non-moving party meets this burden the motion must be denied. Celotex, 477 U.S. at 322-23.

Square D has not met its burden to establish its right to summary judgment on

Justin Braun's claim. Square D has not even <u>alleged</u> an absence of a genuine issue of material fact, let alone established one. Square D misrepresents the record in claiming that there is no evidence that the design defect in the foot switch was a proximate cause of Justin's injuries. Square D misstates the law regarding its duties as a component part manufacturer. Square D distorts Justin Braun's knowledge of the hazards presented by the Press Brake and ignores that Justin Braun had no knowledge of the hazards presented by the Foot Switch. For these reasons, Square D is not entitled to Summary Judgment in its favor.

> **A.  JUSTIN BRAUN HAS ADDUCED EVIDENCE THAT THE SWITCH WAS DEFECTIVELY DESIGNED AND THAT DEFECT PROXIMATELY CAUSED HIS INJURIES.**

Under Pennsylvania law, "Section 402A ... requires only proof that a product was sold in a defective condition unreasonably dangerous to the user or consumer, and that the defect was the proximate cause of Plaintiff's injuries" <u>Parks v. Allied Signal, Inc</u>, 113 F.3d 1327, 1331 (3d Cir. 1997) <u>citing</u> <u>Walton v. AVCO Corp.</u>, 530 Pa. 568, 610 A.2d 454, 458 (Pa. 1992). "Manufacturers are held as guarantors upon a finding of defect and causation." <u>Id.</u> In order to prevail in a Section 402A action, the Plaintiff must show that a product is "unreasonably dangerous to an intended user for its intended use." <u>Parks</u>, *supra* at 1331. In interpreting the phrase "intended use", the 3rd Circuit has held that "the intended use of a product 'includes all those [uses] which are reasonably foreseeable to the seller.' . . . Under the strict liability test, therefore, a Defendant is liable for causing injury to a person who is behaving in a foreseeable manner." <u>Id</u>. The <u>Parks</u> court relied upon the standard

6

jury instructions approved by the Pennsylvania Supreme Court, "The product must . . . be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use.  If you find that the product, at the time it left the Defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then the product was defective, and the Defendant is liable for all harm caused by such defect." Parks at 1331 (citations omitted).

In this case, the evidence to be presented to the jury demonstrates that Justin's foot became lodged in the Square D foot switch which caused the unintended actuation of the Press Brake while Justin was extracting his foot.  The reason for this, in the opinion of Robson Lapina, is that the space between the rigid metal cover of the foot switch pedal is inadequate to accommodate Justin's large steel toed work boots  (See Robson Lapina report, Exhibit "D", p. 8.)  Square D's own designee agrees!  (See Square D Corporate Designee Deposition, Exhibit "C", pp. 55-59).  The force of the spring between the pedal and its base caused the Foot Switch to clamp onto Justin's boot  (See Robson Lapina report, Exhibit "D", p. 8). Moreover, the distance needed to depress the pedal to actuate the foot switch was diminished as a result of Justin's boot being lodged within the Foot Switch resulting in much less force being needed to actuate the switch (See Robson Lapina report and photographs attached thereto).   The defects in the foot switch are illuminated by the testimony of Square D's corporate designee, James McElwee, P.E.,  who has since been designated as their trial expert. Mr. McElwee admits the following:

1. The Foot Switch was not of the appropriate dimensions for Justin to be using it while wearing his large steel toed boots (McElwee Transcript, Exhibit "C", pp. 55-59).

2. It was foreseeable to Square D that its Foot Switch would be used in an industrial setting to actuate equipment including press brakes (McElwee Transcript, Exhibit "C", pp. 25-26, 48).

3. It was foreseeable to Square D that the user of the Foot Switch would be wearing steel toed boots (McElwee Transcript, Exhibit "C", p. 54).

4. It was foreseeable to Square D that its foot switches would be used to actuate machinery that was dangerous without appropriate point of operation guards (McElwee Transcript, Exhibit "C", pp. 72-73).

5. It was foreseeable to Square D that the owner of the machinery or equipment to be actuated by its Foot Switch would fail to employ appropriate safe guards (McElwee Transcript, Exhibit "C", p. 73).

6. The Square D foot switch did not have any warnings affixed to it about the hazards associated with using the foot switch. (McElwee Transcript, Exhibit "C", p.60). At a minimum, these admissions show that the may return a verdict against Square D.

Moreover, the design of the Foot Switch contains an element that makes it unsafe for its intended use. The safety cover creates an entrapment hazard. (See Robson Lapina Report, Exhibit " D ", p. 8). That is evidence sufficient for the jury to determine that the Foot Switch was defective. That entrapment hazard <u>caused</u> the Foot Switch to actuate the Press Brake at a time Justin Braun did not intend. (See Robson Lapina Report, Exhibit " D

", p. 8). That is evidence sufficient for the jury to determine that the defect in the Foot Switch caused Justin Braun's harm. Square D's representation to the Court that there is no evidence of defect or causation is simply not true.

> **B. SQUARE D HAD A DUTY TO WARN OF THE ENTRAPMENT HAZARD PRESENTED BY ITS FOOT SWITCH AND THE RESULTING ACCIDENTAL ACTUATION OF THE PRESS BRAKE**

Square D claims that as a "mere" component part manufacturer, it had no duty to warn Justin Braun of the hazards presented by the Press Brake. Square D's argument misses the mark.

1. <u>The hazards of which Square D should have warned Justin Braun include the entrapment hazard presented by the Foot Switch itself.</u>

In the <u>Wenrick</u> and <u>Jacobini</u> cases cited by Square D, the component manufacturer had nothing to do with <u>creating</u> the risk involved. As the Supreme Court stated,

> [L]imits on a manufacturer's duty to warn come into play where, as in the present case, the manufacturer supplies a mere component of a final product that is assembled by another party and dangers are associated with the use of the finished product. <u>Wenrick v. Schloemann-Siemag Aktiengessellschaft</u>, [532 Pa. 1, 564 A.2d 1244 (1989)]. <u>This is particularly true where the component itself is not dangerous, and where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being a matter of which the component manufacturer has no control.</u> Id.

<u>Jacobini v. V & O Press Co.</u>, 527 Pa. 32, 588 A.2d 476, 479 (1991)(emphasis added). In this case, Square D <u>created</u> the entrapment hazard that caused Justin's harm. The claims against Square D include a claim that it did not warn of the danger presented by the <u>Foot Switch itself</u>. The Foot Switch is not a generic component part. It is "really a separate

9

product with a specific purpose and use". See Fleck v. KDI Sylvan Pools, 981 F.2d 107, 118 (3d Cir. 1992); Colegrove v. Cameron Machine Co., 172 F.Supp. 2d 611, 625 (W.D.Pa. 2001). In such a circumstance, the Wenrick principle on which Square D so heavily relies is inapplicable. Colegrove, supra at 625. Square D, therefore is not excused from its duty to warn of hazards presented by its Foot Switch.[3]

2. Square D had a duty to warn of the entrapment hazard and the hazard of unintended actuation because the hazards were foreseeable to Square D.

The analysis used by the Court in Colegrove is instructive. There, an employee was injured when he unintentionally stepped on an unguarded foot switch that actuated the paper winding machine at which he was working, causing his arm to be pulled into the point of operation and crushed. Allen-Bradley, the foot switch manufacturer, argued that it had no duty to warn of the hazards presented by the winding machine because it was a mere component part manufacturer. The Colegrove court, in a comprehensive opinion rejected Allen-Bradley's position stating, "where a particular use is foreseeable to a manufacturer of some product, that manufacturer is the entity that is best able to warn of the dangers associated with that use. In a situation where a manufacturer is producing a mere component part, the manufacturer is under the same duty to warn of dangers

---

[3] Fundamentally, Square D may be held liable for failure to warn because the Supreme Court of Pennsylvania has held that a manufacturer of a product has a duty to provide those warnings or instructions necessary to make the product safe for its intended use. A product sold without such warnings or instructions is defective. Williamson v. Piper Aircraft Corp., 968 F.2d 380, 385 (3d Cir. 1992). Square D did not warn of, e.g., the entrapment hazard, the need to use only an appropriately sized foot switch, or the need to refrain from "riding the pedal".

10

associated with those uses of the component that are foreseeable to the component's manufacturer (Emphasis added). Colegrove at 629. The Colegrove Court then proceeded to analyze whether or not the use of the Allen-Bradley's foot switch was foreseeable so as to create a duty on the part of Allen-Bradley to warn of hazards associated with the paper winding machine. The Court recounted:

> All that remains, then, is to apply this statement of Pennsylvania's law to the facts before me. The A-B product at issue in this case was a switch, and because any switch will be used to turn something on or off, that use of the switch was foreseeable to A-B. But A-B's switch was not a switch *simpliciter*; it was a *foot* switch. A foot switch is designed to be activated by one's foot, which in turn means that the foot switch will almost certainly be positioned on a floor. A-B even advertised that the treadle of its foot switch was close to the floor to reduce operator fatigue. *See* dkt. no. 41, ex. A. It follows [**47] that the use of the foot switch on the floor was foreseeable to A-B. Moreover, A--B manufactured its Number 805-A4, Series D foot switch specifically for use in plants or factories, presumably to activate the heavy machinery found in such environments. In fact, among the uses for which A-B advertised its foot switch were "operating riveting, welding, and tire machines, punch presses, bending brakes, and many other types of machine tools." *Id.* It follows that A-B could foresee the use of its foot switch to activate heavy equipment on the floor of a manufacturing plant. Because such a use was foreseeable, A-B had a duty to warn of the danger of using the unguarded version of its foot switch around potentially dangerous machinery, where the accidental activation of the switch could result in injury to someone, like Charles Colegrove. To say that A-B had no duty to warn Westvaco of this danger simply because A-B manufactured only a component part is to misinterpret Pennsylvania law.

Colegrove at 629. Many of the factors cited by that Court apply here. In addition, the testimony of Square D's designee, now also its testifying expert, establishes that Square D knew that its foot switches were attached to press brakes, that such equipment could be dangerous to users in the absence of safeguards and that employers sometimes failed to

employ safeguards. (See Square D Corporate Designee Deposition, Exhibit "C", pp. 71-73). All of these factors impose upon Square D a duty to warn, despite its claim to be a "mere" component part manufacturer.[4]  Square D is not entitled to Summary Judgment and, therefore, this Court should deny its Motion.

    C.    JUSTIN BRAUN HAD NO KNOWLEDGE OF THE HAZARD OF UNINTENDED ACTUATION OF THE FOOT SWITCH OR PRESS BRAKE, NOR WERE THOSE HAZARDS OBVIOUS

There is no dispute that Square D did not provide warnings of any kind on its Foot Switch. Square D's designee attempted to torture some assembly schematics supplied with the Foot Switch as a kind of warning but concedes that those schematics do not contain the words "Caution" "Danger" "Warning" or the like. (See Square D Designee Deposition, Exhibit "C", p. 60, Exhibit "2" appended thereto).  Since no warnings were supplied with or on the Foot Switch, Justin Braun is entitled to a rebuttable presumption that he and his employer would have heeded appropriate warnings, had they been given. See Colegrove, at 617, citing Pavlik v. Lane Limited/Tobacco Exporters Int'l., 135 F.3d 876, 883 (3d Cir. 1998).  One way that presumption may be rebutted is if the Plaintiff was previously fully aware of the hazard that caused his harm. See Colegrove, at 618.

---

[4]The Colegrove Court also rejected Allen-Bradley's claim that it had no duty to warn because it did not know the use to which its switch would be put.  The Court stated, "[w]here a component manufacturer produces a product that has multiple uses, each of those uses is foreseeable even though the manufacturer does not know to which specific use from among the multiple uses the component will ultimately be put. Colegrove at 628.  Thus, Square D's claim that it could not warn of hazards associated with the Press Brake because it did not know that its Foot Switch would be attached to the Press Brake must fail because Square D knew that it could be used on such a machine.

To attempt to meet its burden for this dispositive motion, Square D points to Justin Braun's testimony that he knew that if his fingers became caught in the ram of the Press Brake, he could be injured.  Unfortunately for Square D, the hazard about which Square D failed to warn Justin pertained to the entrapment hazard presented by its Foot Switch, and the resulting hazard of unintended actuation, <u>not</u> the hazard of placing one's fingers in the path of the Press Brake's ram.  Despite Square D's attempt to distort Justin's testimony, the fact remains that he will tell the jury, consistent with his deposition testimony, that he did not know the Foot Switch was stuck on his foot, did not know that the Foot Switch could actuate when it was not on the floor and did not know that the Press Brake could operate at a time he did not intend.  See Braun Deposition Transcript, Exhibit "E" pp. 71-72).  Braun had no subjective knowledge of the hazard that caused his harm and, therefore, he remains entitled to have the jury consider the "heeding" presumption in support of his claim that Square D's failure to warn was a proximate cause of his injuries.

Co-defendant Engel has taken the position in its Motion that the heeding presumption is rebutted by Bohrer-Reagan's "typical" reliance on oral instruction to its employees about safe handling of equipment such as the Press Brake. What Engel and Square D ignore, however, is that they did not provide <u>any</u> warnings of the entrapment hazard, nor the hazard of unintended actuation.  The heeding presumption provides too that the <u>employer</u> would have heeded the warnings, <u>if they had been given.</u>  Even assuming that Bohrer-Reagan would still have relied upon oral instruction, Justin Braun

is entitled to the presumption that Bohrer-Reagan would have told him about the entrapment and unintended actuation hazards, had Bohrer-Reagan been warned about them, presumably because they are non-obvious defects that can lead to precisely the kind of tragic injuries sustained by Justin.

Although Square D has tried to obscure the defects in its Foot Switch, both in design and failure to warn, the fact remains that Justin Braun has adduced sufficient evidence from which the jury could conclude that the Foot Switch was defective and that its defects caused his harm. In this case, therefore, Summary Judgment in Square D's favor is inappropriate and his Court should deny its Motion.

IV <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff, Justin Braun, requests that this Honorable Court enter an Order that Square D's Motion for Summary Judgment be DENIED.

> Respectfully submitted,
>
> KOZLOFF STOUDT
>
> _____/s/_____
> Peter F. Schuchman, Jr.
> Attorney for Plaintiff

Peter F. Schuchman, Jr., Esquire
Pa. Attorney ID# 69343
KOZLOFF STOUDT
2640 Westview Drive
PO Box 6286
Wyomissing, PA   19610
(610) 670-2552                                              Attorneys for Plaintiff
_____

| | |
|---|---|
| JUSTIN M. BRAUN, | : IN THE UNITED STATES DISTRICT COURT |
| | : FOR THE EASTERN DISTRICT OF |
| Plaintiff | : PENNSYLVANIA |
| | : |
| vii. | : Docket No. 02-CV-4001 |
| | : |
| SQUARE D COMPANY and | : JURY TRIAL DEMANDED |
| ENGEL INDUSTRIES, INC., | : |
| Defendants | : |

_____

## Certificate of Service
_____

I, Peter F. Schuchman, Jr., Esquire, attorney for Plaintiff, certify that on August 11, 2003, that I electronically filed the foregoing *Plaintiff's Brief in Opposition to Defendant Engel Industries, Inc.'s Motion for Partial Summary Judgment* via the ECF system and it is available for viewing and downloading from the ECF system.  I further certify that the foregoing *Plaintiff's Brief in Opposition to Defendant Engel Industries, Inc.'s  Motion for Partial Summary Judgment* was served upon the following party by first class mail:

Michael P. Zipfel, Esquire                 W. Matthew Reber, Esquire
Rawle & Henderson LLP                      Center Square West, Suite 1500
The Widener Building, 16th Floor           1500 Market Street
1339 Chestnut Street                       Philadelphia, PA 19102
Philadelphia, PA 19102

                                           KOZLOFF STOUDT

                                           _____/s/_____
                                           Peter F. Schuchman, Jr., Esquire
                                           Attorney for Plaintiff