IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN M. BRAUN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SQUARE D COMPANY and | : | NO. 02-4001 |
| ENGEL INDUSTRIES, INC. | : | JURY TRIAL DEMANDED |

**DEFENDANT ENGEL INDUSTRIES, INC.'S
MOTION *IN LIMINE* TO PRECLUDE CERTAIN OPINIONS
OFFERED BY PLAINTIFF'S LIABILITY EXPERTS**

Defendant Engel Industries, Inc., by its attorneys, Rawle & Henderson LLP,

respectfully requests that this Court enter an Order *in Limine* to preclude plaintiff's liability

experts from offering certain opinions, and in support thereof, moving defendant asserts the

following:

1.      Plaintiff Justin Braun filed this products liability lawsuit against

defendants Square D Company and Engel Industries, Inc. to recover damages for personal

injuries that he sustained as a result of an industrial accident.

2.      On April 4, 2001, plaintiff Justin Braun, a sheet metal apprentice

employed by Bohrer-Reagan Co., suffered a crush injury to the four fingers on his right hand

while operating a Bendall press brake manufactured by defendant Engel Industries, Inc.

3.      The press brake, which was sold to Bohrer-Reagan Co. in 1969, is an

industrial-size machine that is used to form products out of sheet metal.  The typical operation of

the machine requires the operator to hold a piece of sheet metal in the desired position, to form

the appropriate bend, and the machine is then activated by means of a "foot switch"

manufactured by defendant Square D Company.

4.        When the brake press was sold in 1969, a Square D foot switch was

delivered to Bohrer-Reagan Co. with the machine.  However, the original foot switch broke and

its was replaced with another Square D foot switch at some point after 1988.

5.        At the time of the accident, the plaintiff was fabricating a piece of duct out

of sheet metal.  According to the Complaint, plaintiff's foot "became lodged between the pedal

and the safety cover affixed to and forming a part of the foot switch," which activated the press

brake while plaintiff's hand was in the path of the "blade."

6.        During his deposition, plaintiff Justin Braun described the accident as

follows:

> Q.    Do you want to explain, again, in your own words
>       what happened?
>
> A.    I was making an H-boot, I finished it up, I ran out of
>       material so I went to grant the H-boot out of the
>       machine and I turned to walk away.  As I turned to
>       walk away, my foot was caught in the pedal.  I
>       looked down to see what who holding my foot and
>       my foot was already in the air.  I put my foot back
>       down on the ground and when I looped up, my hand
>       was caught in the machine.
>
>                   •       •       •       •
>
> Q.    At the moment that you were pulling your foot out of the pedal,
>       where do you know you right hand apparently must have been?
>
> A.    Underneath the blade on the metal.
>
> Q.    Is it fair to say that you didn't realist your hand was there?
>
> A.    I knew it was on the metal.
>
> Q.    On the H-boot you meant?
>
> A.    Yes.
>
> Q.    It is fair to say that you did not know what part of your hand was
>       under the blade?

2

A.       No; no.

Q.       What it be fair to say that you would not deliberately put any part of your hand under the blade at any point in time?

MR. SCHUCHMAN:  Objection to the form.

THE WITNESS:  Yes

BY MR. WAGNER:

Q.       Obviously, you would know that if your hand was under the blade and the blade came down, you would be badly injury?

A.       Yes.

MR. SCHUCHMAN:  Objection to the form.

See Dep. of J. Braun, attached hereto as Exhibit "A," at pp. 71, 75-76.

        7.       On the day of the accident, a co-worker, Bob Bova, showed Mr. Braun how to operate the Bendall press brake.  After five minutes, however, Mr. Bova was instructed to return to his own job.

        8.       Furthermore, during his deposition, plaintiff testified that he did not feel that he  needed written instructions regarding the operation of the press brake because he felt he was "adequately informed about how to operate it."  See Deposition of J. Braun, Exhibit "A," at p. 46.

        9.       Furthermore, plaintiff admitted that he knew that he needed to be careful while operating the brake press.  See Deposition of J. Braun, Exhibit "H," at p. 49.  In particular, he knew "to be careful about where the blade is at all times."  Id.  He understood "that if you got your hand caught under the blade, you could be injured."  Id. at p. 50.  He understood that if his "hand were under the blade and the blade came down, [he] would be badly injured."  Id. at p. 76.  He also understood that if he "had [his] hand in the hand in the point of operation during a cycle that [he] was going to get injured."  Id. at pp. 160-61.

3

10.     The Complaint alleges claims for strict liability, negligence and breach of warranty against defendants Square D Company and Engel Industries, Inc.

11.     Plaintiff produced a report drafted jointly by Ronald D. Schaible and Norman W. Johanson, who have been designated as trial experts.

12.     In that report, Mr. Schiable and Mr. Johnson offer the opinion that "Braun's actions were reasonable."   See report attached hereto as Exhibit "B," at p. 8.  This opinion is not admissible because it constitutes a legal conclusion and is an attempt to tell the jury the result that should be reached.

13.     Mr. Johnson also offers the opinion that the Bendall press brake lacked "point-of-operation guards" and " if such a guard had been present Brown's hand **may** have been prevented from entering the under-ram area." Id. at p. 6.  These opinions are not admissible because they lack an adequate factual basis and they are not offered with the requisite degree of certainty required by Pennsylvania law.

WHEREFORE, defendant Engel Industries, Inc. respectfully requests that this Court enter an Order *in Limine* that precludes plaintiff's experts from (1) offering the opinion that "Braun's actions were reasonable" or (2) offering any opinions regarding point-of-operation guards.

RAWLE & HENDERSON LLP


By:_____
           Michael P. Zipfel, Esquire
           Identification No. 57303
           The Widener Building
           One S. Broad Street
           Philadelphia, PA 19107
           Attorneys for defendant,
           Engel Industries, Inc.

Dated:  August 11, 2003

4

854678 v.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSTIN M. BRAUN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SQUARE D COMPANY and | : | NO. 02-4001 |
| ENGEL INDUSTRIES, INC. | : | JURY TRIAL DEMANDED |

**DEFENDANT ENGEL INDUSTRIES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE**
**CERTAIN OPINIONS OFFERED BY PLAINTIFF'S LIABILITY EXPERTS**

**A.      STATEMENT OF FACTS**

Plaintiff Justin Braun filed this products liability lawsuit against defendants

Square D Company and Engel Industries, Inc. to recover damages for personal injuries that he

sustained as a result of an industrial accident.  On April 4, 2001, plaintiff Justin Braun, a sheet

metal apprentice employed by Bohrer-Reagan Co., suffered a crush injury to the four fingers on

his right hand while operating a Bendall press brake manufactured by defendant Engel

Industries, Inc.

The press brake, which was sold to Bohrer-Reagan Co. in 1969, is an industrial-

size machine that is used to form products out of sheet metal.  The typical operation of the

machine requires the operator to hold a piece of sheet metal in the desired position, to form the

appropriate bend, and the machine is then activated by means of a "foot switch" manufactured by

defendant Square D Company.

When the brake press was sold in 1969, a Square D foot switch was delivered to

Bohrer-Reagan Co. with the machine.  However, the original foot switch broke and its was

replaced with another Square D foot switch at some point after 1988.

At the time of the accident, the plaintiff was fabricating a piece of duct out of sheet metal.  According to the Complaint, plaintiff's foot "became lodged between the pedal and the safety cover affixed to and forming a part of the foot switch," which activated the press brake while plaintiff's hand was in the path of the "blade."  During his deposition, plaintiff Justin Braun described the accident as follows:

> Q.    Do you want to explain, again, in your own words what happened?
>
> A.    I was making an H-boot, I finished it up, I ran out of material so I went to grant the H-boot out of the machine and I turned to walk away.  As I turned to walk away, my foot was caught in the pedal.  I looked down to see what who holding my foot and my foot was already in the air.  I put my foot back down on the ground and when I looped up, my hand was caught in the machine.
>
> •      •      •      •
>
> Q.    At the moment that you were pulling your foot out of the pedal, where do you know you right hand apparently must have been?
>
> A.    Underneath the blade on the metal.
>
> Q.    Is it fair to say that you didn't realist your hand was there?
>
> A.    I knew it was on the metal.
>
> Q.    On the H-boot you meant?
>
> A.    Yes.
>
> Q.    It is fair to say that you did not know what part of your hand was under the blade?
> A.    No; no.
>
> Q.    What it be fair to say that you would not deliberately put any part of your hand under the blade at any point in time?
>
> MR. SCHUCHMAN:  Objection to the form.
>
> THE WITNESS:  Yes

2

BY MR. WAGNER:

Q.    Obviously, you would know that if your hand was under the blade and the blade came down, you would be badly injury?

A.    Yes.

MR. SCHUCHMAN:  Objection to the form.

See Dep. of J. Braun, attached hereto as Exhibit "A," at pp. 71, 75-76.

On the day of the accident, a co-worker, Bob Bova, showed Mr. Braun how to operate the Bendall press brake.  After five minutes, however, Mr. Bova was instructed to return to his own job.  During his deposition, plaintiff testified that he did not feel that he  needed written instructions regarding the operation of the press brake because he felt he was "adequately informed about how to operate it."  See Deposition of J. Braun, Exhibit "A," at p. 46. Furthermore, plaintiff admitted that he knew that he needed to be careful while operating the brake press.  See Deposition of J. Braun, Exhibit "H," at p. 49.  In particular, he knew "to be careful about where the blade is at all times."  Id.  He understood "that if you got your hand caught under the blade, you could be injured."  Id. at p. 50.  He understood that if his "hand were under the blade and the blade came down, [he] would be badly injured."  Id. at p. 76.  He also understood that if he "had [his] hand in the hand in the point of operation during a cycle that [he] was going to get injured."  Id. at pp. 160-61.

The Complaint alleges claims for strict liability, negligence and breach of warranty against both defendants. To support these claims, plaintiff produced a report drafted jointly by Ronald D. Schaible and Norman W. Johanson, who have been designated as trial experts.  In their report, Mr. Schiable and Mr. Johnson offer the opinion that "Braun's actions were reasonable."   See Report attached hereto as Exhibit "B," at p. 8.  Through this Motion, defendant seeks to preclude plaintiff's experts from offering this opinion at the time of the trial

3

because it constitutes a legal conclusion and is an attempt to tell the jury the result that should be reached.

Mr. Johnson also offers the opinion that the Bendall press brake lacked "point-of-operation guards" and " if such a guard had been present Brown's hand **may** have been prevented from entering the under-ram area." Id. at p. 6.  Defendant also seeks to preclude these opinions because they lack an adequate factual basis and they are not offered with the requisite degree of certainty required by Pennsylvania law.

**B.**      **ARGUMENT**

         **1.**      **Plaintiff's Experts Should Be Precluded From Offering Opinions Regarding The Reasonableness Of Plaintiff's Conduct.**

In this case, the conduct of Mr. Braun is relevant for many reasons.  As to the negligence claim, it is relevant to the defense of contributory negligence and, as to the strict liability claims, including the alleged failure to warn, plaintiff's conduct is relevant to the issue of causation.  Therefore, evidence will be presented during the trial regarding Mr. Braun's conduct and, based on that evidence, the jury will be asked to make determinations regarding various issues.   In particular, the jury will be asked to decide if Mr. Braun was contributorily negligent and whether his conduct caused the accident.  Therefore, it is improper for plaintiff's experts to state that Mr. Braun's conduct was "reasonable."

Pursuant to Fed.R.Evid. 704(a), opinion testimony is not objectionable because it involves an ultimate issue in the case.  However, Rule 704 clearly states that the testimony must be "otherwise admissible."  Therefore, "opinions that merely tell the trier of fact what result to reach or state a legal conclusion in a way that says nothing about the facts are still objectionable." 29 Wright and Gold, Federal Practice and Procedure: Evidence §6284, p. 379

854678 v.1

(1997); see also Rossman v. K-Mart Corp., 701 F.Supp. 1127, 1130 (M.D. Pa. 1988) aff'd 866

F.2d 1413 (3rd Cir. 1988) (testimony of expert that permitting a crowd to gather was "improper"

was properly excluded because it was "testimony on the ultimate issue of negligence, . . . [and]

was certainly an area that the lay jury could itself make a determination from the testimony that

was presented at trial.")  Haberern v. Kaupp Vascular Surgeons Ltd., 812 F.Supp.  1376, 1378

(E.D.Pa. 1992) ("an expert may not opine legal conclusions drawn from applying the law to the

facts.")

In this case, the opinion that Mr. Braun's actions were "reasonable" is simply a

legal conclusion and an attempt to offer an opinion regarding the proper interpretation of the

facts.  Therefore, plaintiff's experts should be precluded from offering this inadmissible opinion.

**2.      Plaintiff's Experts Should Be Precluded From Offering Opinions
Regarding Point-Of-Operations Guards**

The substantive  law of Pennsylvania defines plaintiff's burden of proof in this

case.  Therefore, since proving causation with the requisite degree of certainty is an element of

plaintiff's burden of proof, the substantive law of Pennsylvania defines the level of certainty that

is required before an expert can offer an opinion regarding the issue of causation.  In re Paoli v.

R.R. Yard PCB Litigation, 35 F.3d 717, 750-751 (3d Cir. 1994), cert. denied, 513 U.S. 1190

(1995).

In the case of Kravinsky v. Glover, 263 Pa.Super. 8, 396 A.2d 1349 (1979), the

Superior Court of Pennsylvania confirmed that expert testimony is not admissible under

Pennsylvania law "if it lacks an adequate factual basis." Id. at 20, 396 A.2d at 1255.  In addition,

the Court discussed the "standard of certainty" that must be met before an expert's testimony

becomes relevant and admissible:

> When a party must prove causation through expert testimony the
> expert must testify with "reasonable certainty" that "in his

5

> 'professional opinion, the result in question did come from the
> cause alleged.'" *McCrosson v. Philadelphia Rapid Transit Co.*,
> 283 Pa. 492, 496, 129 A. 568 569 (1925). *See Hamil v. Bashline*,
> *supra*. An expert fails this standard of certainty if he testifies
> "'that the alleged cause "possible", or "could have" led to the
> result, that it "could very properly account" for the result, or even
> that it was "very highly probable" that it caused the result.' *Niggel*
> *v. Sears, Roebuck & CO.*, 219 Pa.Super. 353, 354, 355, 281 A.2d
> 718, 719 (1971); *Menarde v. Philadelphia Trans. Cor.*, 376 Pa.
> 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.*, 286
> Pa. 199, 133 A.256 (1926); *Moyer v. Ford Motor* Co., 205
> Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter*, 252 Pa.Super.
> 203, 225, 381 A.2d 459, 470 (1977).

Id. at 21, 396 A.2d at 1355-56; see also Montgomery v. South Philadelphia Medical Group, Inc.,

441 Pa.Super. 146, 155-156, 656 A.2d 1385, 1390 (1995).

In the field of products liability law, the "standard of certainty" requires that an

expert "who offers his opinion must testify with some definiteness about the causes of the

accident. The expert must assert that it is his professional opinion that the result in question

**actually came**, not might have come, from the cause alleged." Moyer v. Ford Motor Co., 205

Pa.Super. 384, 388, 209 A.2d 43, 46 (1965) (emphasis in original). In Moyer, the plaintiff was

driving a new Ford automobile "when it suddenly veered out of control and crashed, in spite of

his efforts to turn the steering wheel." Id. at 386, 209 A.2d at 44. Plaintiff's expert, an

automobile mechanic, testified that the accident was caused by a "locked" or "frozen" wheel.

The trial court entered judgment n.o.v. in favor of the defendant and the Superior Court affirmed

because the testimony of plaintiff's expert was insufficient to state a cause of action:

> No actual evidence was presented by appellant to
> prove that the wheel of the automobile did, in fact,
> lock or freeze. Rather, [plaintiff's expert] simply
> assumed that the reason for the accident was a
> locked or frozen wheel, disregarding all other
> possibilities. He was then permitted to speculate
> even further that the cause of this freezing was
> either improper lubrication or improve adjustment.

6

In addition, appellant's expert witness was never able to state, with the definiteness required of an expert, his opinion as to the actual cause of this accident. He could, at best, only enumerate those factors which could conceivably cause a locked wheel on a 1960 Ford automobile. He could only assume that omissions in lubrication or wheel adjustment were the responsibility of appellee's factory.

Thus, the testimony of appellant's expert witness emerges as no more than a series of assumptions, one gingerly balancing atop the other, resting on no solid foundation of fact. In such circumstances, the court en banc was well justified in entering judgment n.o.v. on the basis that appellant had failed to adduce sufficient proof at trial to justify the submission of this case to the jury.

Id. at 388-89, 209 A.3d at 45.

Furthermore, in the case of Niggel v. Sears, Roebuck and Company, 219 Pa.Super. 353, 281 A.2d 718 (1971), the plaintiff, a truck driver, was making a delivery to a Sears store and the store manager gave him several boxes which were bound by steel wires which "were joined together by a connection twisted by a machine in the store." Id. at 353-54, 281 A.2d at 718. As the driver lifted one of the boxes, "two ends of the wire pulled apart at the connection, one end whipping across his face and lacerating his right eye." Id. During trial, plaintiff presented the testimony of a civil engineer who testified that the unraveling of the wire was the proximate cause of the accident. The expert "testified that 'the connection could have failed' . . . and went on to say '[y]ou can't say exactly that is the cause of it. That could have been the cause of the failure. It's quite probable that was the cause of the failure. . . . Under the statistics of the situation, under the parameters that we looked at, it is a good probability that the wire system failed under these loads.'" Id. at 354, 281 A.2d at 719.

7

Since this expert's testimony was the only evidence on causation, the trial court

granted judgment n.o.v. and the Superior Court affirmed because the expert's testimony was

insufficient to establish a cause of action:

> In *McCrosson v. Philadelphia Rapid Transit Co.*, 382 Pa. 492, 495-496, 129 A. 568, 569 (1925), our Supreme Court set forth a legal test concerning the sufficiency for causation testimony by expert witnesses which "required the expert to testify * * * that, in his 'professional opinion, the result in question [did] come from the cause alleged.  * * *'" Numerous cases since *McCrosson* have established that the expert witness must assert that the result in question actually came from the cause alleged.  It is not enough to say that the alleged cause "possible", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.
>
> A review of the record in the instant case establishes that the expert witness' testimony on causation did not rise to the level required.  Initially he equivocated between "could have" and "probably".  Even after being cautioned to choose another word, he returned to "could have".  From the extended colloquy it is clear that he did not choose "could" for want of a better word, but because it was exactly the word he meant to use. Even when the witness finally acquiesced to use the language proffered by appellant's attorney, that the unraveling wire caused the accident, he qualified this assertion to "in the context of which we set this thing forth".  At no point was there a definite statement that "the result in question did come from the cause alleged" as required by *McCrosson*.
>
> Since the expert witness' testimony was the only evidence on causation, and it did not meet the required standards of proof, the lower court was correct in granting a Judgment N.O.V. for appellee.

Id. at 354-55, 281 A.2d at 719 (citations omitted).

8

Based upon these decisions, it is clear that expert testimony is not admissible under Pennsylvania law if it is not supported by facts of record and/or if the expert cannot testify with the proper "standard of certainty." More specifically, in a product liability case, the testimony of an expert is legally insufficient, and has no relevance, if the expert cannot state that the result in question actually came from the cause alleged.

In this case, plaintiff's experts have offered the opinion that the Bendall press brake "should have been equipped with segmented guards to prevent the hand of an operator from entering the hazard areas **adjacent to** the actual work-inset area." See Report, Exhibit "B," at p. 5. An illustration of such a guard was provided which shows the proposed location of the guard. These opinions regarding a point-of-operation guard, however, are only relevant if there is evidence to support a conclusion that the lack of a guard caused plaintiff's accident. There is no such evidence in this case.

In their report, plaintiff's expert state that "[i]f such a guard had been present Braun's hand **may** have been prevented from entering the under-ram area." See Report, Exhibit "B", at page 5. This opinion, however, is not offered with the requisite degree of certainty.

As indicated, the point-of-operation guard proposed by plaintiff's experts would only protect the areas **adjacent to** the work area, not the work area itself. The reason for this is obvious. The addition of a guard that blocked the work area would render the machine useless.

More importantly, during his deposition, plaintiff testified that his hand was on the H-boot at the time of the accident – i.e. his hand was in the work area. Therefore, any opinions regarding point-of-operation guards that protect areas adjacent to the work area are not relevant and should be precluded since the theory that the lack of a guard contributed to the accident is not supported by "an adequate factual basis." Kravinsky, 396 A.2d at 1255. Furthermore, the opinion that such guards "may" have prevented the accident is certainly not

9

854678 v.1

offered with the "standard of certainty" required by Pennsylvania law. Therefore, defendant

Engel Industries, Inc. requests that this Court preclude any opinions regarding a need for point-

of-operation guards.

**III.    CONCLUSION**

        Based upon the foregoing, defendant Engel Industries, Inc. respectfully requests

that this Court enter an Order *in Limine* that precludes plaintiff's experts from (1) offering the

opinion that "Braun's actions were reasonable" or (2) offering any opinions regarding point-of-

operation guards.

                                    RAWLE & HENDERSON LLP

                                By:_____

                                      Michael P. Zipfel, Esquire
                                      Identification No. 57303
                                      The Widener Building
                                      One S. Broad Street
                                      Philadelphia, PA 19107
                                      Attorneys for defendant,
                                      Engel Industries, Inc.

Dated:  August 11, 2003

854678 v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUSTIN M. BRAUN                 :         CIVIL ACTION
                                      :
    v.                       :
                                      :
SQUARE D COMPANY and     :         NO. 02-4001
ENGEL INDUSTRIES, INC.      :         JURY TRIAL DEMANDED


## ORDER

AND NOW, this ____ day of _____, 2003, upon consideration of the

Motion *in Limine* filed by defendant Engel Industries, Inc. and any response thereto, it is hereby

ORDERED that the Motion is GRANTED and plaintiff's experts are PRECLUDED from: (1)

offering the opinion that Mr. Braun's actions were reasonable; and (2) offering any opinions

regarding point of operation guards.


**BY THE COURT:**


_____
                                          J.


854678 v.1

## CERTIFICATE OF SERVICE

      I, Michael P. Zipfel do hereby certify that a copy of the foregoing Motion *in Limine* of Defendant Engel Industries, Inc. was sent via first class mail, postage pre-paid on August 11, 2003 to the following:

| | |
|---|---|
| Peter F. Schuchman, Jr., Esquire | Matthew Reber, Esquire |
| Kozloff & Stoudt | Kelley, Jasons, McGuire & Spinelli |
| 2640 Westview Drive | Suite 1500, Centre Square West |
| PO Box 6286 | 1500 Market Street |
| Wyomissing, PA 19610 | Philadelphia, PA 19102 |

RAWLE & HENDERSON LLP

By:_____
          Michael P. Zipfel, Esquire
          Identification No. 57303
          One S. Broad Street
          The Widener Building
          Philadelphia, PA 19107

854678 v.1